LILLIAN McDOUGAL, Appellee, v. JOHN H. BORMANN, Appellant. No. 40483.

FEBRUARY 10, 1931.

*Donnelly, Lynch, Anderson & Lynch,* for appellant.

*Carl F. Jordan,* for appellee.

GRIMM, J.—I. The accident in this case occurred at the intersection of Third Avenue East and South Tenth Street in Cedar Rapids. Third Avenue runs substantially east and west, and for the purposes of this case will be considered as running east and west. Tenth Street runs at right angles thereto. On Third Avenue there is a double-track street car line. On Tenth Street there is a single-track street car line. The intersection is

governed by the ordinary red, yellow, and green electric signals. At the southeast corner of the intersection is a drug store; at the southwest corner of the intersection is a large church; at the northwest corner of the intersection is a Standard Oil filling station; at the northeast corner of the intersection is another large church. Both the avenue and the street are paved. The avenue is wider than the street.

The petition, which was filed February 12, 1930, alleges, among other things, that, on the 4th day of September, 1929, plaintiff, in company with her husband, was driving east on the south side of Third Avenue towards Tenth Street. Plaintiff was a passenger in her husband's car, and the husband was driving. It is alleged that, as this McDougal (plaintiff's) car approached Tenth Street, it slowed down for a change in signal lights, and when the change took place, it continued eastward across the intersection of Tenth Street to a point where it was "about parallel with the southeast corner of the intersection." It is claimed that at that time there came from behind a west-bound trolley car the automobile of Mrs. Bormann, wife of the defendant; that the defendant's car came from the north side of Third Avenue, and was headed in a southwesterly direction, and in this manner she passed the street car on the south side thereof and to the left thereof, and "cut" the intersection of Third Avenue and Tenth Street East; that the defendant's car, at that time and place, was being operated with the defendant's consent. When the driver of the McDougal car discovered the impending danger, he swerved his car to the right, and the defendant's car was swerved to the defendant's left, but the cars came together. The plaintiff alleges lack of contributory negligence.

The allegations of negligence are, in substance: First, "cutting" the intersection, and failing to drive around the center of the intersection, as provided by law; second, failing to keep the car under control, and failing to operate it at a speed which would not endanger the life and property of others; third, that defendant's car was driven in a reckless and imprudent manner, and without regard to the safety and convenience of this plaintiff; fourth, that the defendant was proceeding at a dangerous rate of speed; fifth, that the defendant's driver failed to operate said car with due respect to other vehicles, using the highway; sixth, an ordinance of Cedar Rapids prohibiting the passing of a

street car on the left was set forth; seventh, an ordinance of Cedar Rapids requiring travel on the right-hand side of the center of the street was pleaded; eighth, an ordinance of Cedar Rapids requiring the turning around the center of the intersection in turning to the left was pleaded. The plaintiff charged the defendant with the violation of each of said three ordinances. Plaintiff then alleges injury and consequent damages. The defendant answered by way of general denial and contributory negligence on the part of the plaintiff.

It is claimed that the defendant was driving at an excessive rate of speed; that defendant's car was not under proper control; and that the defendant did not observe the signals. It appears from the record that, at the time of the collision, which was late in the afternoon, it was raining hard. The Bormann car was proceeding westerly on the north side of Third Avenue, and Mrs. Bormann intended to turn south in the intersection and proceed southerly on Tenth Street. There was a street car on the north side of Third Avenue, headed west. It had stopped just east of the east line of Tenth Street, to unload passengers, and was standing there as Mrs. Bormann approached the intersection from the east. The dispute in the evidence is as to what happened from this point.

It is the claim of the defendant that Mrs. Bormann followed the street car *across* the easterly half of the intersection, and beyond the center of the intersection, and then turned her car to the left, and that the cars "side-swiped" while she was moving in a southerly direction. The McDougals (plaintiff) testified that their car entered the intersection at a speed of 20 miles an hour, and while the street car was standing on the easterly intersection; that the Bormann car came from behind this street car while it was thus standing east of the intersection; that the Bormann car entered the intersection and proceeded south and east of the center of the intersection; and that the automobiles "side-swiped" while the Bormann car was headed south.

There seems to be no dispute in the evidence regarding the location of the cars when they came to rest. The plaintiff's car came to rest in Tenth Street, headed south on the street car track, which is located on Tenth Street. It appears that the Bormann car came to rest in Third Avenue, headed in a south or southeasterly direction, with the front end of the car east of the curb

line of Tenth Street, and that at least one of the front wheels had passed over the curb. The plaintiff testified that she was able to see through the wind shield without any difficulty, and that she saw the Bormann car before the collision. Mr. McDougal testified that he could have stopped his car within two or three feet. It appears that the distance between the street car track upon which the street car, headed west, was standing, and the curb on the south side of Third Avenue, was about 22 feet.

Briefly stated, it appears to be defendant's theory that his car entered the intersection on the north side of the street car, and followed the street car across the east half of the intersection, and then turned to the left,—that is to the south,—around and beyond the center of the intersection, and that, while he was proceeding in that direction (southerly), the two cars ''side-swiped,'' and defendant's car was turned easterly on Third Avenue; while it is the theory of the plaintiff that defendant's car turned to the left at the rear of the street car and entered the intersection on the south side of the street car at a point east of the center of the intersection, and that the cars ''side-swiped'' and came to rest as described. Without dispute, it appears the cars were but very slightly damaged; and, parenthetically, it may be stated that, upon the plaintiff's theory of the case, there is no satisfactory showing of how the defendant's car, if proceeding as the plaintiff claimed, immediately before the accident, became turned completely around in such a short, narrow space.

By alleged errors Nos. 1 and 2, the appellant contends there is no sufficient basis in the record for a recovery of damages for any injury or for pain and suffering.

It is undisputed in the record that the plaintiff was thrown by the impact of the cars against the front end of the car in which she was riding, and that, as a result thereof, ''the tendons and muscles of her left leg were severely wrenched, and the tendons and muscles of her shoulder were severely bruised, and that she was stunned and bruised by the impact.''

It is alleged in the petition that she experienced great pain and suffering. The testimony shows that, as a result of the injury, her left leg, shoulder, neck, and back were sprained and sore; that the plaintiff was unable to sleep, for a period of time after the injury. The evidence shows there were marks on her shoulder, followed by discoloration. There is abundant evidence

in the record to show that the plaintiff suffered pain after the accident, and that her normal sleep was interfered with, and that she was nervous as a result of the accident.

An examination of the instructions discloses that the question of future pain and suffering was not submitted to the jury, but that the recovery for pain and suffering was confined to "physical pain which she had suffered."

Without further quoting from the pleadings or the proof, we hold against the appellant on Errors Nos. 1 and 2.

II. The appellant challenges the correctness of Instruction No. 4. The portion of the instruction to which complaint is made provides, in substance, that, if the driver of defendant's car

 failed to observe any one of the ordinances or statutes which were pleaded and introduced, then the jury would be "warranted in finding the defendant guilty of negligence."

The appellant correctly claims that failure to observe an ordinance or statute is merely prima-facie evidence of negligence. It is only a presumption, which may be rebutted and overcome. The question is whether, under the pleadings and evidence in this case, the language of which complaint is made is prejudicial. There is here no attempt to excuse any alleged violation of an ordinance or statute. The record contains a clear-cut conflict between the plaintiff and the defendant on the subject of violation of ordinances. It is the contention of the plaintiff that the defendant violated the ordinances in question, and the contention of the defendant that the ordinances were not violated. It was for the jury to determine whether it believed the plaintiff's evidence or the defendant's evidence. If the jury believed the plaintiff, then the ordinances were violated. If the jury believed the defendant, then the ordinances were not violated. Moreover, if the jury believed the plaintiff, that the defendant violated one or more of the ordinances, there was no effort on the part of the defendant to excuse or explain the violation. Manifestly, the ordinance might be violated under such conditions as that a jury might well find that the violation was not negligence; but there is here no attempt to prove that a violation of an ordinance was not negligence. The unexplained or unexcused violation of a city or-

dinance would "warrant the jury in finding the defendant guilty of negligence."

Upon the pleadings and the particular facts in this case, and under the contentions of the parties, we think the instruction as given was not prejudical; but we are not to be understood as holding that the instruction as given would be good under a different state of facts.

III. It is claimed by the appellant that the court erred in failing to instruct the jury respecting the plaintiff's own duty under the circumstances.

In Instruction No. 4, the court directed the jury, in substance, that, in order that the plaintiff recover, the jury must find that the plaintiff herself was not guilty of any negligence contributing to the accident and resulting injury.  In Instruction No. 5, the court gave a definition of "contributory negligence." In several of the other instructions, the court definitely cautioned the jury that the plaintiff could not recover unless she proved herself free from contributory negligence at the time of the happening of the accident. The evidence shows that this accident happened quickly. There was only a very brief space of time between the time when the plaintiff first discovered the defendant's car at the intersection and the happening of the collision. Moreover, it clearly appears that the plaintiff's car was promptly handled, in the only way in which it could be handled, to possibly avert the collision or diminish the result thereof. We see no merit in appellant's Error No. 4.

IV. In Error No. 5, the appellant raises several objections to Instruction No. 12. It is first claimed that the instruction is erroneous because it permits recovery for pain, when there was no evidence tending to show that the plaintiff endured any pain on account of any injuries which she received at the time of the collision of the cars.

There is an abundance of uncontradicted evidence in the record in answer to this charge.

It is further claimed that the instruction is erroneous because it permits recovery for injury to the plaintiff's nerves. It is true that there was no medical testimony in this case, but there

 is uncontradicted evidence tending to show that the plaintiff suffered from the shock which she received, and that she was troubled with sleeplessness, headaches, and general nervousness, following the injury. The evidence tends to show that she was not afflicted with any of these difficulties prior to the accident.

Upon reviewing the evidence, we find that there is sufficient evidence in the record to warrant the jury in finding that she suffered from some disturbance of the nervous system by reason of the physical injuries sustained in the collision. It would have been better, had medical testimony been introduced to explain the connection between the physical injuries sustained and the nervous disturbance, loss of sleep, etc., which followed.

It is next claimed that, under the terms of Instruction No. 12, the jury were permitted to speculate in reference to future pain and suffering. A sufficient answer to that, is that, by the very terms of the instruction, the recovery is limited to a reasonable sum to compensate her ''for the physical pain which she has suffered, if any, and for such injuries to her nerves as the evidence shows she has suffered, if any, and for such lack of ability to sleep as the evidence shows she has suffered, all by reason of her injuries:''

V. Under the sixth alleged error, the verdict is attacked as ''excessive.'' The verdict was for $1,000. The record has been carefully examined with relation to this charge, and we are unable to find any warrant for disturbing the verdict as excessive. The accident occurred on the 4th day of September, 1929. The case was tried about the middle of February, 1930, or about five months after the accident. The plaintiff testified that, at the time of the trial, she was still suffering an inconvenience from the accident. She testified: ''I still get pains in my back.'' Upon the whole record, we find against the appellant on this issue.

VI. It is next claimed that there was misconduct on the part of one of the jurors.

By order of the court, the jury was sent to the scene of the accident. After they had examined the premises, they were discharged by the bailiff, as previously ordered by the court. One of the jurors stepped into the drug store at the southeast corner of the intersection where the accident occurred, in which drug store one of the witnesses who testified at the trial worked. He

was working there at the time of the accident, and saw a part of the accident from the doorway of the drug store.

Without going into the details, we may say that the record has been carefully examined, and we find no evidence of misconduct on the part of the jurors.

We might have reached a different conclusion on the facts; but since we are sitting to review errors only, and upon the case as here presented, the cause must be, and is,—*Affirmed.*

All the justices concur.