### KEENAN v. DIRECTOR GENERAL OF RAILROADS.*

(Circuit Court of Appeals, Second Circuit. November 13, 1922.)

#### No. 71.

1. **Master and servant** ⊂⊃111(1½)—**Safety Appliance Act protects employee crossing between cars.**

   The Safety Appliance Acts (Comp. St. § 8605 et seq.), which were intended to promote the safety of employees and travelers, and section 8 of which (Comp. St. § 8612) eliminated assumption of risk in case of a violation covering any employee of any common carrier who may be injured, was not limited in the case of a defective coupling to an employee who was in the act of coupling or uncoupling the cars, but covers liability for injury to an employee whose duties in carrying water required him to cross numerous tracks on which were strings of freight cars, and who was injured while climbing over the bumpers when other cars collided with the string, because the coupler between them and the rest of the train broke.

2. **Master and servant** ⊂⊃129(6)—**Defective coupler is proximate cause of injury resulting from its failure to work.**

   A defective coupler is the proximate cause of any injury to an employee, who was lawfully performing his duty at the time, where its failure to hold was the proximate cause of a collision between two strings of cars, resulting in an injury to an employee on one of the strings.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 43 Sup. Ct. 361, 67 L. Ed. ——.

In Error to the District Court of the United States for the Western District of New York.

Action at law by Thomas Keenan against the Director General of Railroads to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Harris, Beach, Harris & Matson, of Rochester, N. Y. (Daniel M. Beach and Paul Folger, both of Rochester, N. Y., of counsel), for plaintiff in error.

Carroll & Degnan, of Niagara Falls, N. Y. (Joseph A. Wechter, of Buffalo, N. Y., of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The parties will be referred to by the designation used below; i. e., the defendant in error will be referred to as the plaintiff, and the plaintiff in error as the defendant.

The defendant maintains a freight yard at Suspension Bridge, New York, where there are upwards of 40 tracks. The tracks are referred to by numbers and the place of injury to the plaintiff was in that portion of the yard lying between the freight house and No. 37 platform. Here there are 17 tracks in all. On the day of the plaintiff's injury, July 19, 1919, there were 3 or 4 cars standing on track No. 25 in the yard, which track ran generally east and west and was at a point directly north of the oil platform. The plaintiff was attempting to pass over the bumpers between 2 of these cars, and was caught and his leg crushed resulting in its amputation. The cars at the time he attempted to cross, were standing still, but a string of cars drifted down on track No. 25 in a westerly direction and bumped into the 3 or 4 standing cars while the plaintiff was attempting to cross. It appears that these cars had broken away from a train which was pulling east on track No. 25, and this was due to the fact that a sill which held a coupler on one of the cars gave way, permitting the coupler to drop to the ground at the switching point on track No. 25 east of the oil platform. Keenan's work had been handling freight, sweeping out cars, and bringing ice and water to the workmen in the yard. His duty on the day in question was to carry water from the freight house to No. 37 platform; in doing so, he was obliged to cross some 18 tracks, over which there was no footpath or crossing. All but 2 of these tracks were actively employed. At the time he was returning with a full pail of water to the workmen in the yard. Keenan looked to the west, and, though he could see to the westerly end of one of these strings of cars, he could not see as far as the westerly end of the other strings of cars. He could not see the east end of these strings of cars although he could see 40 or 50 car lengths down the track to the east. He testified:

"I took my pail, and put it in, and set it down, under the cars, half ways, as far as I could reach, on the bare ground between the rails. It was underneath the bumpers."

He attempted to climb to the end of the box car, and reached to the iron handle which was fastened to the end of the box car, having one

foot up on the step, and after he took hold on the iron bar to help himself over the bumpers to get to the other side, the runaway car struck the east end of the string of cars, and the crash threw him outside, with his right leg across the rail, and the wheels crushed it. There was no warning of the collision or crash, and the first he knew of the car colliding was when he was thrown. Liability was imposed below for a violation of the Safety Appliance Act, and the question presented here is whether or not the plaintiff, engaged as he was, was entitled to the benefits accorded an employee by reason of the terms of the act. Act April 14, 1910, c. 160, 36 Stat. 298 (Comp. St. § 8617 et seq.).

This string of cars was to be started into various tracks in the westbound yard (the yard where the accident occurred). A cut was made in 2 or 3 cars into track No. 25, and one of the crew of trainmen rode that string in and stopped it before coming against the cars standing thereon. The next cut was intended for another track, and while the westerly end of the train was still a car and a half length on track No. 25 the engine stopped, the train parted, and the rear or westerly cars ran down to track No. 25, striking the cars that had previously been shunted down, forcing them against the standing cars further west, and moving them sufficiently to cause the jerk and the consequent throwing of Keenan from the bumpers. The cars parted because a coupler pulled out of the west end of one of the cars, leaving the coupled car still attached to the train. It appears that the entire coupler pulled out, comprising the coupler pocket, knuckle pin, and knuckle lock. The cause was the breaking apart of the sill which held it in place. It was necessary, in the performance of his work, for the plaintiff to cross a large number of tracks, and he had no other way than to climb over the cars in question in making progress in performing his duty.

[1] The Safety Appliance Act was intended by Congress "to permit the safety of employees and travelers." There seems to have been no limitation placed on these two clauses, and in the absence of limitation it is applicable to all employees and all travelers. Again, section 8 of the act (Comp. St. § 8612) eliminates the assumption of risk in case of violation covering "any employee of any common carrier who may be injured." Does it apply to employees who are injured by trains when not in the act of coupling or uncoupling cars? In Louisville & Nashville R. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931, it was held that an interstate railway carrier was liable in damages for an employee injured in the discharge of his duty, regardless of the position he was in at the time of his injury. In this case, the couplers failed to work automatically in a switching operation, and resulted in a collision of cars from one of which the plaintiff, a switchman, was thrown. He was standing on one of the 5 cars for the purpose of releasing the brakes and was thrown to the track. The court said:

"The declared purpose of the Safety Appliance Act of 1893 (27 Stat. 531, c. 196), and of the amendatory acts of 1903 and of 1910, is 'to promote the safety of employees * * * upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers * * * and for other purposes,' and at the time the plaintiff was injured

these acts made it unlawful for any carrier engaged in interstate commerce to use on its railroad any car not so equipped. Southern Railway Co. v. United States, 222 U. S. 20; Southern Railway Co. v. Railroad Commission of Indiana, 236 U. S. 439. By this legislation the qualified duty of the common law is expanded into an absolute duty with respect to car couplers, and if the defendant railroad companies used cars which did not comply with the standard thus prescribed they violated the plain prohibition of the law, and there arose from that violation a liability to make compensation to any employee who was injured because of it. [Citing authorities.]

"While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required—not from the position the employee may be in or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them engaged in the discharge of duty."

In Minneapolis & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995, the employee was on top of the train and was thrown to the ground by a coupler parting. He was not engaged in coupling or uncoupling cars. The court held the Safety Appliance Act applicable and imposed liability. To the same effect, see Erie Railroad Co. v. Caldwell (C. C. A.) 264 Fed. 947, and McCalmont v. Pennsylvania Co. (D. C.) 273 Fed. 231.

The defendant recognizes the force of these decisions, but contends that in a later case these authorities were overruled, and refers us to Lang v. New York Central R. R., 255 U. S. 455, 41 Sup. Ct. 381, 65 L. Ed. 729. In that case the brakeman, whose duty it was to stop a string of switching cars before they reached a car standing on a siding awaiting unloading, was injured in a collision with it, having failed to stop the cars moving in time. It was held that the fact that the standing car lacked a drawbar and coupler at the end where the impact was did not render the railroad company liable for the injury, even if their presence would have prevented it. The court said:

"It was the duty of the crew, we repeat, and immediately the duty of Lang, to stop the colliding car and to set the brakes upon it, 'so as not to come into contact with the crippled car,' to quote again from the trial court. That duty he failed to perform, and, if it may be said that, notwithstanding, he would not have been injured if the car collided with had been equipped with drawbar and coupler, we answer, as the Court of Appeals answered, still 'the collision was not the proximate result of' the defect. Or, in other words, and as expressed in effect in the Conarty Case, that the collision under the evidence cannot be attributed to a violation of the provisions of the law, but only that, had they been complied with, it [the collision] would not have resulted in the injury to the deceased."

[2] Reading the Lang Case as we do, we are of the opinion that it was decided upon the question of proximate cause, for it was held that the proximate cause of the injury to the deceased there was not due to the alleged violation of the Safety Appliance Act. But in the case here

under consideration the question of proximate cause was submitted to the jury. It was demonstrated that Keenan was rightly where he was at the time of his injury, and that there was a violation of the statute which caused the cars to come down on track No. 25. In the Caldwell Case (C. C. A.) 264 Fed. 947, it was held that, where a train broke in two parts because of a defective coupler, and a member of the crew, who was standing upon the ground in a safe position, climbed upon one of the detached cars, which had started down grade, and set the brakes in an unsuccessful attempt to prevent the collision, and was injured in the collision which followed, could recover. His action there was held to be in line with his duty, and apparently not imminently dangerous, and it was held to be the proximate cause of his injury.

Plaintiff's act was essential to the performance of his duty. He had no warning or knowledge of the impending danger. If the coupler had held, there would have been no collision, and no consequent injury. The purpose of the statute is aimed at keeping men out of the space between the cars, but it is also aimed at insuring couplers that will hold together, and if it can be shown that the proximate cause was the result of a defective coupler, which permitted cars to run wild and injure men lawfully performing their duty, the failure of the coupler to work would be deemed the proximate cause of the injury and liability will be imposed therefor.

We find no error below. Judgment affirmed.