JACK KOWALSKI v. CHICAGO & NORTH WESTERN
RAILWAY COMPANY.[1]

May 23, 1924.

No. 23,934.

**Removal of action to Federal court—concurrent jurisdiction under Federal act.**

1. By following the course prescribed by statute, a defendant, entitled to remove a cause to the United States district court, arrests the jurisdiction of the state court and effects a removal to the Federal court. No action by the state court is necessary, although the usual practice is to enter an order of removal.

The jurisdiction of the state and Federal courts of a cause of action arising under the Federal Employers Liability Act is concurrent. Removability of a case when commenced is determined by the allegations of the complaint. Voluntary subsequent action of the plaintiff may make the case removable, although it was not removable when commenced.

**Automatic coupling apparatus required by statute.**

2. The drawbeams of a freight car, to which the drawbar is attached, are an integral part of the automatic coupling apparatus required by the Federal Safety Appliance Act.

**Submission of issue to jury not prejudicial.**

3. Defendant was not prejudiced by the submission to the jury of a question which must be resolved in plaintiff's favor as a matter of law.

**Verbal inaccuracy in charge not ground for reversal.**

4. A verbal inaccuracy in the statement of the falsus in uno rule, not called to the court's attention before the jury retired, is not ground for a reversal.

**Excessive verdict reduced.**

5. The damages awarded are excessive, and, unless respondent consents to a reduction to $10,000, a new trial is granted.

[1]Reported in 199 N. W. 178.

Action transferred to the district court for Lyon county to recover $50,000 for injuries received while employed as freight brakeman by defendant. The case was tried before Gislason, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $15,000. From an order denying its motion to set aside the verdict and remove the cause to the United States District Court, for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed, on condition that plaintiff consented that the verdict be reduced to $10,000.

*Brown, Somsen & Sawyer* and *James H. Hall,* for appellant.

*Tom Davis, Ernest A. Michel, R. M. Haines* and *Charles L. De Reu,* for respondent.

LEES, C.

Plaintiff brought this action, under the Federal Employers Liability Act, to recover damages for personal injuries sustained when a freight train upon which he was a brakeman broke in two. He obtained a verdict for $15,000, and defendant has appealed from an order (1) denying its motion that the verdict be set aside and the cause removed to the United States District Court; (2) denying its motion in the alternative for judgment notwithstanding the verdict or for a new trial.

1. The first portion of the order may not be appealable, St. Anthony Falls W. P. Co. v. King W. I. B. Co. 23 Minn. 186, 23 Am. Rep. 682, but respondent has not raised the point and we pass it by without considering it. If appellant had a right to remove the cause by pursuing the course prescribed by the statute, a removal was effected and the jurisdiction of the court below was arrested. Roberts v. Chicago, St. P. M. & O. Ry. Co. 48 Minn. 521, 51 N. W. 478; Ewert v. Minneapolis & St. L. R. Co. 128 Minn. 77, 150 N. W. 224, Ann. Cas. 1916D, 1047. No action by the state court is necessary, but the usual practice is to enter an order of removal if, on examination, the petition and bond appear to be sufficient. Lee v. Cont. Ins. Co. 292 Fed. 408; Lewis, Removal of Causes, § 276.

Respondent offered no proof of the allegation of the complaint that he was employed in interstate commerce when he was injured. At the close of the evidence his counsel admitted that fact, whereupon appellant presented a petition for removal on the ground of diversity of citizenship, accompanied by a proper bond, and asked the court to proceed no further with the trial, but the request was denied.

Under the Federal Employers Liability Act, the jurisdiction of the state and Federal courts was concurrent, and, as the complaint was framed, the case was not originally removable. Miner v. Chicago, B. & Q. R. Co. 147 Minn. 21, 179 N. W. 483. It was held in Great Northern Ry. Co. v. Alexander, 246 U. S. 276, 38 Sup. Ct. 237, 62 L. ed. 713, that in the absence of a fraudulent puurpose to defeat removal, the plaintiff may, by the allegations of his complaint, determine the status of a case arising under a law of the United States with respect to its removability; that this power continues with the plaintiff throughout the litigation; and that whether a case, nonremovable when commenced, afterwards becomes removable, depends not upon what the defendant may allege or prove, or what the court may order, but solely upon the form which the plaintiff gives to the pleadings by his voluntary action as the case progresses towards a conclusion, and then this was said:

"The plaintiff did not at any time admit that he had failed to prove the allegation that the deceased was employed in interstate commerce when injured * * * but, on the contrary, he has contended at every stage of the case and in his brief in this court still contends that the allegation was supported by the evidence."

Here, it was not contended that there was proof of respondent's employment in interstate commerce. That fact distinguishes this case from the Alexander case and probably justifies appellant's contention that it had a right to a removal notwithstanding the form respondent gave to his complaint.

But, if the right existed, it should have been asserted at the first opportunity. It is well settled that the right of removal may be waived by the acts or omissions of the party entitled to exercise it,

Smithson v. Chicago G. W. Ry. Co. 71 Minn. 216, 73 N. W. 853; Lewis, Removal of Causes, § 36, and that it is waived if it is not exercised at the first opportunity. Powers v. C. & O. Ry. Co. 169 U. S. 92, 18 Sup. Ct. 264, 42 L. ed. 673; Alexander v. Great North. Ry. Co. 51 Mont. 565, 154 Pac. 914, L. R. A. 1918E, 852; S. C. 246 U. S. 276, 38 Sup. Ct. 237, 62 L. ed. 713; Lewis, Removal of Causes, § 232. We are of the opinion that the first opportunity to assert it was presented when respondent rested without offering proof of his employment in interstate commerce. Without then asserting it, appellant proceeded to introduce evidence in support of its defense, and by so doing we think the right was waived. We cannot agree with the contention that, until the admission of respondent's counsel was obtained, there had been no voluntary retreat from or abandonment of the position respondent took in his complaint.

2. When the train separated, respondent was riding in the caboose. The automatic setting of the air brakes brought the rear portion of the train to a sudden stop and respondent was thrown against the corner of a table and fell backward to the floor. It was discovered that one of the drawbeams under a car near the middle of the train had given way. There were two drawbeams bolted to the car, the drawbar being inserted in the space between them, with its inner end attached to a yoke and spring, fastened to the drawbeams. The only purpose they served was to hold the drawbar and the car together. If either of them gave way, the drawbar would drop out of place and the car would separate from the one next to it and could no longer be automatically coupled to it.

The court submitted the case to the jury on the theory that a showing had been made which would support a finding of a violation of the Federal Safety Appliance Act. Appellant asserts that this was wrong because the act cannot be construed to apply to drawbeams.

The act declares that it shall be unlawful for a common carrier, engaged in interstate commerce by railroad, to haul a car used in moving interstate traffic unless it is equipped with couplers coupling automatically by impact and uncoupling without the necessity

of men going between the ends of the cars, section 8606, U. S. Comp. St. and provides that cars must be equipped with drawbars maintained at a standard height designated by the interstate commerce commission. Section 8609, U. S. Comp. St. The standard height at which drawbars must be maintained has an intimate relation not only to the safety of the coupling operation, but also to the security of the coupling when made.

Under appellant's construction, a drawbeam might be wholly insufficient to maintain the drawbar at the standard height, or to hold it in place at all, and yet there would be no violation of the act if the coupler or outer end of the drawbar was free from defects. We cannot adopt this construction. The act is to be viewed in the light of the beneficent purpose its framers were seeking to accomplish and should receive a liberal construction so that the purpose plainly intended by Congress may not be defeated. Frye v. Chicago, R. I. & Pac. Ry. Co. 157 Minn. 52, 195 N. W. 629, One of the aims of the act is to keep men out of the space between cars, and another is to insure the use of couplers which will hold cars together, Keenan v. Director General, 285 Fed. 286, hence, when one car is used in connection with another, that portion of the equipment of each which has to do with the safety and security of the attachment between the two should conform to the standard set by the act. So. Ry. Co. v. Crockett, 234 U. S. 725, 34 Sup. Ct. 897, 58 L. ed. 1564.

Broadly speaking, the evils against which the act was directed were those which attended the old-fashioned link and pin couplings, St. Louis & S. F. Ry. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. ed. 1290, but this was not the only aim of the act, for its protection extends to trainmen not actually engaged in coupling cars at the time of injury. Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931; Minneapolis & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. ed. 995; Keenan v. Director General, supra.

That the use of a car with a defective drawbar would be a violation of the act, is the logical result of our holding in Goneau v. Minneapolis, S. P. & S. S. M. Ry. Co. supra, page 41, where

it was held that the carrier irons by which drawbars are supported are so much a part of a coupler that, as a matter of law, the act is violated by hauling a car in a train when one of the carrier irons is in such a condition that the drawbar cannot be kept at the standard height. In our view, every appliance which is an essential portion of the contrivance for coupling and holding cars together is within the scope and purpose of the act. The drawbeams are an integral part of the coupling appliance, and when they are so defective that the car to which they are attached cannot be held to another by means of the coupler, there is a violation of the act.

3. In substance the jury were instructed that appellant was negligent if the car in question was not equipped with an efficient coupler, or if the coupling apparatus was broken or defective. Appellant complains that this left the jury free to use their own judgment in determining whether drawbeams are part of the coupler within the scope and meaning of the act. Holding as we do that they are, appellant was not prejudiced by the submission to the jury of a question which, as a matter of law, must be resolved in respondent's favor.

4. The jury were told that if they believed that any witness had wilfully testified falsely regarding a material matter "you will then disregard his testimony" except as confirmed by the testimony of other witnesses. Technically this was erroneous; "may" instead of "will" was the word which should have been used. The verbal inaccuracy was not called to the court's attention at the time and appellant cannot now complain. Greenfield v. Unique Theatre Co. 146 Minn. 17, 177 N. W. 666.

5. The verdict is attacked as excessive. The accident happened on January 13, 1923. The trial took place 5 months later. Respondent's conduct after the accident indicated that no serious effects followed immediately, but he testified that he could do no work after he was hurt because he could not use his right leg. He walked with crutches and wore a leather corset, and complained of pain in the small of his back. Basing his testimony in part upon an X-ray examination of the spine and in part upon a physical ex-

amination, Dr. Rees, called by respondent as a medical expert, stated that two of the lumbar vertebrae were tipped out of line and cracked, causing a callus to form, which pressed on the nerves at the point of the injury; that respondent's right leg was numb and weak and could not be moved without pain; and that, although there was no complete paralysis of the muscles of the leg, they had become permanently weakened. On cross-examination, he admitted that except in a general way he could not tell how much permanent disability there was and added that future improvement was to be expected.

Some of appellant's medical experts were of the opinion that respondent was shamming. They find no fracture of the vertebrae and no formation of callus. They did find a congenital deformity of the spine in that there were 6 lumbar vertebrae—one more than the normal number. They believed that, if there was numbness of the leg, it was either hysterical or the result of the congenital deformity and was not caused by any injury.

Aside from the testimony of Dr. Rees, there was little evidence upon which to base so large a verdict, and we are asked to follow Appleby v. Payne, 149 Minn. 77, 182 N. W. 901, and grant a new trial. In that case the difficulty in sustaining the verdict arose because of the uncertainty as to the duration of the disability. We encounter the same difficulty here. The short interval between the injury and the trial has something to do with it. If more time had elapsed, the doctors might have spoken with more confidence as to the probable outcome. The testimony of Dr. Rees falls short of establishing to a reasonable certainty that the conditions he found at the time of the trial will not change for the better.

After carefully considering all the evidence relating to damages, we reach the conclusion that the verdict is excessive and that there should be a new trial unless respondent consents to a reduction.

The order denying the motion for judgment notwithstanding the verdict and the order denying the motion to vacate the verdict and direct the removal of the cause to the United States District Court, are affirmed.

The order denying a new trial is reversed and a new trial granted, unless within 20 days after the going down of the remittitur the respondent files in the district court his consent that the verdict and the judgment to be entered thereon be reduced to $10,000. If such consent is filed, the order denying a new trial will stand and be affirmed.