ELLA M. VOILES, Appellant, v. HOWARD HUNT et al., Appellees.

No. 41189.

FEBRUARY 16, 1932.

Prichard & Prichard, for appellant.

Gill & Gill, for appellees.

DE GRAFF, J.—The plaintiff-appellant was driving her Ford car north on a paved highway, 18 feet in width, when she approached a wagon drawn by a team of horses at a walk, going in the same direction. Plaintiff was just starting up the incline of an overhead railroad crossing. The defendant-appellee Hunt was driving a truck some distance to the rear of plaintiff and in the same direction. Hunt was driving the truck for his co-defendant McCall, who was the owner of the truck. The plaintiff saw a car approaching from the north over the overhead crossing and slowed her car to the speed of the wagon. She was driving on the right-hand side of the road. She attempted to pass the wagon, and in so doing she turned out to go around it, but, observing a car coming from the north, she turned back in behind the wagon, and in so doing, necessarily brought her car to a stop, or almost to a stop, without giving the hand signal. The plaintiff testified that in using her brake at that time, the stop light automatically flashed on. The defendant Hunt testified that he observed no signal from the plaintiff or her car that would indicate to him that she was about to stop or turn back into the path of his car. The defendant Hunt testified:

"As she went around me about 600 feet south of where the accident took place she pulled in front of me, and as she started up this incline I was about 60 feet behind her, and as she neared

the overhead crossing she pulled out to go around the wagon, and suddenly, without any warning or signal, turned back in behind the wagon, and we could not avoid the accident. * * * I could not see the other car from the north until after she started to pull out. I couldn't say how far the car coming from the north was away when she started to pull back in.''

John Wagner, a witness for the defendants, testified:

''I noticed Mrs. Voiles's (plaintiff's) car as she started to pull out around the wagon. The wagon was just going up the raise. I couldn't say how far her car was behind the wagon at that time. She just pulled out as if she was going to go by the wagon, and just as she pulled out far enough so she could see by the wagon she pulled back in. I couldn't say how it came to happen as to the truck striking her. I think that she had gone clear back in behind the wagon before the truck hit her. It occurred to me just like she had pulled back behind the wagon when the truck struck her. I could not see the other car coming south there at all. * * * My notion is, as Mrs. Voiles turned to get back in behind the wagon, as near as I could tell she came to a stop to get in line with the wagon that was ahead of her.''

The driver of the car coming from the north, called as a witness on behalf of the plaintiff, testified:

''On the afternoon of October 11, 1930, I was travelling on Federal Highway No. 75 north of Onawa, going south. I came down over the overhead crossing about a half mile north of Onawa. At that time, or shortly afterwards, I saw the plaintiff, Mrs. Voiles. As I was coming down the hill, there was a wagon, and a Ford Coupé was behind the wagon, and there was a truck behind the Ford Coupé. All three were coming north. As I was coming down the hill the truck evidently intended to pass the Ford and the wagon. As he (driver) turned back in, the truck bumped the Ford from the rear and bumped the Ford into the wagon.''

The plaintiff testified in answer to a question as to what happened after she passed the truck:

''Well, I drove on up the road, and there was a wagon ahead of me 300 or 400 feet. I looked in my glass, and the

truck seemed to be 15 or 20 rods behind me, anyway 15 rods, and I started to pull out, and saw the car coming on the overhead crossing. I knew I couldn't get by the wagon. I didn't have time and was not going fast enough to go ahead of the wagon, and I put on my stop light and slacked speed and drove in behind the wagon. I had been travelling from 30 to 35 miles per hour. I drove in behind the wagon; drove within 15 feet of the wagon, and was on the right-hand side of the road, and was watching the wagon and the car that was coming toward me. I was travelling then about the speed a team could walk, about 3 or 4 miles per hour. I saw the car that was coming down the hill get about even with the horses' heads, and I didn't remember any more.''

The primary errors relied upon for a reversal have to do with the propositions based on the court's instructions and the failure of the trial court to grant a new trial.

It is a well established principle that the instructions of a court must be read as a whole, and not in piecemeal, to determine their correctness.

The pertinent inquiry in the case at bar is whether Instruction 12 given by the court is correct. This instruction is based upon Section 5032, Code, 1927, which reads:

''The operator of a motor vehicle shall, before stopping, turning, or changing the course of such vehicle, first see that there is sufficient space to make such movement in safety and shall give a visible or audible signal to the crossing officer, if there be such, or to the drivers of vehicles following, of his intention to make such a movement, by raising and extending the hand or by a proper signal or device indicating with it the direction in which he wishes to turn.''

The trial court further instructed the jury in this instruction:

''So you are instructed that if the plaintiff, Ella M. Voiles, changed the course of the Ford coupé she was driving or desired to stop the same, at or about the time of the accident referred to in this case, it was her duty to give a visible or audible signal to the driver of the automobile or truck following, to indicate the direction in which she wished to turn, or that she

was about to stop her automobile; and that if she failed to give such warning or signal, then and in that event she was negligent."

It has been declared many times by this court that a failure on the part of a driver to observe provisions of the statute would be at most but *prima facie* evidence of negligence. The instruction in question placed a greater burden upon the plaintiff than was warranted by the law, since the violation of a statute is not negligence *per se*, but is merely *prima facie* evidence of negligence. Johnson v. Kinnan, 195 Iowa 720; McElhinney v. Knittle, 199 Iowa 278; Cooley v. Killingsworth, 209 Iowa 646. In the recent case of McDougal v. Bormann, 211 Iowa 950, it is said:

"The appellant correctly claims that failure to observe an ordinance or statute is merely prima facie evidence of negligence. It is only a presumption, which may be rebutted and overcome."

We reach the conclusion that the trial court was in error in giving Instruction 12, wherein he said that if the plaintiff "failed to give warning or signal, then and in that event she was negligent." For any such failure she was only *prima facie* guilty of negligence, which might be properly rebutted and overcome by other evidence in the case. See Masonholder v. O'Toole, 203 Iowa 884, l. c. 887; Corning v. Maynard, 179 Iowa 1065; Clark v. Weathers, 178 Iowa 97; Sergeant v. Challis, 213 Iowa 57. The doctrine of last clear chance is not involved under the facts of the instant case. Appellant contends to the contrary.

The court was in error in overruling plaintiff's motion to set aside the judgment entered and for new trial.—Reversed.

WAGNER, C. J., and FAVILLE, ALBERT, and MORLING, JJ., concur.