O'DONNELL, ADMINISTRATRIX, *v.* ELGIN,
JOLIET & EASTERN RAILWAY CO.

No. 56.  Argued October 21, 1949.—Decided December 12, 1949.

*Joseph D. Ryan* argued the cause and filed a brief for petitioner.

*Harlan L. Hackbert* argued the cause and filed a brief for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This action was brought under the Federal Employers' Liability Act, 45 U. S. C. §§ 51–60. The complaint mingled in a single count or cause of action charges of general negligence and a specific charge that defendant "carelessly and negligently" violated the Safety Appliance Act, 45 U. S. C. § 2, by operating a car not equipped with the prescribed coupler. The jury found against plaintiff and judgment for defendant was affirmed by the Court of Appeals. 171 F. 2d 973. This result must stand if the jury was properly instructed, as to which the Court of Appeals divided.

O'Donnell, whose administratrix is petitioner here and was plaintiff below, met an unwitnessed death while working in defendant's yards as a member of its switching crew. When last seen, he was going to adjust the couplers on certain cars which previously had failed to couple by impact. Shortly after his departure, as the result of the breaking of a coupler, two cars broke loose from a cut of cars that was being moved in a switching

operation.   Running free, they collided with other stand-
ing cars and drove them against those whose couplers
decedent had said he was going to adjust.   Some time
later decedent's mangled body was found lying across one
rail of the track on which the cars he had intended to
prepare for coupling had stood.   That he had gone be-
tween them to adjust the couplers is suggested by the
fact that they coupled upon impact with the colliding
cars, though they previously had failed so to do.   Peti-
tioner's contention, from all the circumstances proved,
is that O'Donnell's death was proximately caused by the
breaking of the coupler, which permitted the two cars
to run free, strike the standing cars, and cause unexpected
movement of the cars between which O'Donnell was
engaged.   Respondent contends that they indicate in-
stead that death resulted from a later and independent
movement on the track when the runaway cars were
hauled out—an event which took place before discovery
of decedent's body but after the collision of the two sets
of cars.   We need not resolve the conflict between these
competing theories of causation, for that decision was
for the jury.   *Ellis* v. *Union Pacific R. Co.,* 329 U. S.
649, 653.

Our concern is with the effect accorded by the trial
court's instructions to the breaking of the coupler.   The
issue was defined by the Court of Appeals: "The record
is devoid of any request by plaintiff that the jury be
instructed that they might infer negligence from the
breaking of the coupler, but in the District Court plaintiff
contended for and tendered instructions upon the theory
that a breaking of the coupler in and of itself was negli-
gence per se.   The court refused to so instruct."   171 F.
2d at 976.   The Court of Appeals, with one dissent, sus-
tained this refusal so to charge, saying, "We do not believe
the Act required defendant to furnish couplers that would
not break.   We think the true rule is that where a cou-

pler does break, the jury may, if they think it reasonable under all the circumstances, infer that the coupler was defective and was furnished and used in violation of the Act. The cases go no further than to hold that from the breaking of a coupler the jury may infer negligence." As this view of the Safety Appliance Act appears to conflict with the rule laid down in other jurisdictions,[1] we granted certiorari. 337 U. S. 929.

A close and literal reading of the Safety Appliance Act, 45 U. S. C. § 2,[2] suggests that two functions only are required of couplers: that they couple automatically by impact and that they uncouple without requiring men to go between the ends of the cars. This construction finds some support in the decisions. See, *e. g., St. Louis & San Francisco R. Co.* v. *Conarty,* 238 U. S. 243, 250; *Chicago, B. & Q. R. Co.* v. *United States,* 220 U. S. 559, 571; *Louisville & Nashville R. Co.* v. *Layton,* 243 U. S. 617; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 18. See also *United States* v. *Southern R. Co.,* 135 F. 122, 127 (S. D. Ill., 1905); *Chesapeake & Ohio R. Co.* v. *Charlton,* 247 F. 34, 40 (C. A. 4th Cir., 1917); *Chicago, M.,*

---

[1] *Philadelphia & R. R. Co.* v. *Eisenhart,* 280 F. 271 (C. A. 3d Cir., 1922); *Keenan* v. *Director General of Railroads,* 285 F. 286 (C. A. 2d Cir., 1922); *McAllister* v. *St. Louis Merchants Bridge Terminal R. Co.,* 324 Mo. 1005, 1014, 25 S. W. 2d 791, 796 (1930); *Southern Pacific Co.* v. *Thomas,* 21 Ariz. 355, 360–361, 188 P. 268, 270 (1920); *Kowalski* v. *Chicago & N. W. R. Co.,* 159 Minn. 388, 392–393, 199 N. W. 178, 180 (1924); *Saxton* v. *Delaware & Hudson Co.,* 256 N. Y. 363, 176 N. E. 425 (1931). Cf. *Vigor* v. *Chesapeake & O. R. Co.,* 101 F. 2d 865, 868 (C. A. 7th Cir., 1939); *Western & Atl. R. Co.* v. *Gentle,* 58 Ga. App. 282, 295, 198 S. E. 257, 265 (1938).

[2] "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

*St. P. & P. R. Co.* v. *Linehan,* 66 F. 2d 373, 377 (C. A. 8th Cir., 1933); *Penn* v. *Chicago & N. W. R. Co.,* 163 F. 2d 995, 997 (C. A. 7th Cir., 1947).

Courts at other times have held, however, that failure of couplers to remain coupled until released constitutes or evidences a violation of the Act just as does their failure to couple upon impact or uncouple from the sides of cars. As stated by the Court of Appeals, Second Circuit, the Act "is also aimed at insuring couplers that will hold together." *Keenan* v. *Director General of Railroads,* 285 F. 286, 290 (C. A. 2d Cir., 1922); *Philadelphia & R. R. Co.* v. *Eisenhart,* 280 F. 271 (C. A. 3d Cir., 1922); *Erie R. Co.* v. *Caldwell,* 264 F. 947 (C. A. 6th Cir., 1920); *Southern Pacific Co.* v. *Thomas,* 21 Ariz. 355, 188 P. 268; *Kowalski* v. *Chicago & N. W. R. Co.,* 159 Minn. 388, 199 N. W. 178; *McAllister* v. *St. Louis Merchants Bridge Terminal R. Co.,* 324 Mo. 1005, 25 S. W. 2d 791; *Saxton* v. *Delaware & Hudson Co.,* 256 N. Y. 363, 176 N. E. 425; *Stewart* v. *Wabash R. Co.,* 105 Neb. 812, 182 N. W. 496. And see *Reetz* v. *Chicago & E. R. Co.,* 46 F. 2d 50 (C. A. 6th Cir., 1931). This appears also to have been the view of this Court in the only case of this nature ever before it. *Minneapolis & St. Louis R. Co.* v. *Gotschall,* 244 U. S. 66. See also *Minneapolis, St. Paul & Sault Ste. Marie R. Co.* v. *Goneau,* 269 U. S. 406.

It is hard to think of a coupler defect in which greater danger inheres to workmen, travelers and all to whom the railroad owes a duty, than one which sets cars running uncontrolled upon its tracks. We find it difficult to read the Safety Appliance Act to require that cars be equipped with appliances which couple automatically by impact and which may be released without going between the ends of cars, but which need not remain coupled in the meantime. The Act so construed would guard against dangers incident to effecting an engagement or

disengagement while ignoring the even greater hazards which can result from the failure of a coupling to perform its main function, which is to stay coupled until released.

We hold that the Safety Appliance Act requires couplers which, after a secure coupling is effected, will remain coupled until set free by some purposeful act of control.

What then should a jury be instructed is the consequence of a failure to provide couplers that so perform? Should the jury be instructed that it must find liability or merely that it may find liability for injuries proximately resulting from the failure?

The arguments and instructions in this case, as well as others, and the language of many opinions and texts reflect widespread confusion as to the effect to be accorded a violation of the federal safety appliance statute.[3] Part of this confusion is traceable to the diversity of judicial opinion concerning the consequences attributed in negligence actions to the violation of a statute.[4]

---

[3] *E. g., San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476; *Minneapolis & St. Louis R. Co.* v. *Gotschall,* 244 U. S. 66; *Southern Pac. Co.* v. *Thomas,* 21 Ariz. 355, 361, 188 P. 268, 270; *Western & Atlantic R. Co.* v. *Gentle,* 58 Ga. App. 282, 198 S. E. 257; *Vigor* v. *Chesapeake & O. R. Co.,* 101 F. 2d 865, 869. See also 2 Roberts, Federal Liabilities of Carriers, §§ 620, 655 *et seq.,* 789, 790 (2d ed. 1929); 2 Shearman & Redfield on Negligence, § 183 (rev. ed. 1941); Thornton, Federal Employers' Liability and Safety Appliance Acts, §§ 289, 302, 311 (3d ed. 1916); Richey's Federal Employers' Liability, Safety Appliance, and Hours of Service Acts, §§ 56, 217, 252 (2d ed. 1916).

[4] For discussions of the general problem and illustrative cases, see Prosser on Torts, § 39; Harper, Law of Torts, § 78; Bohlen, Cases on Torts, pp. 187–204 (3d ed. 1930); 1 Shearman & Redfield on Negligence, §§ 11, 12 (rev. ed. 1941); 2 Restatement of the Law of Torts, §§ 286–288; Thayer, Public Wrong and Private Action, 27 Harv. L. Rev. 317; Lowndes, Civil Liability Created by Criminal Legislation, 16 Minn. L. Rev. 361.

Breach of certain statutes in various jurisdictions will be regarded as some evidence of negligence, to be weighed by the jury along with the facts. *Hayes* v. *Michigan Central R. Co.,* 111 U. S. 228, 240; *Union Pacific R. Co.* v. *McDonald,* 152 U. S. 262, 283. At other times or places, or under other statutes, a violation may be "prima facie" or "presumptive" evidence of negligence which defendant must meet or overcome. *E. g., Voiles* v. *Hunt,* 213 Iowa 1234, 240 N. W. 703. Courts sometimes talk of it in terms of *res ipsa loquitur, cf. Minneapolis & St. Louis R. Co.* v. *Gotschall, supra,* or treat violations as negligence *per se. E. g., San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476, 484; *Watts* v. *Montgomery Traction Co.,* 175 Ala. 102, 57 So. 471; *Evans* v. *Klusmeyer,* 301 Mo. 352, 359, 256 S. W. 1036, 1037–1038. It is not uncommon that within the same jurisdiction the rule is different as to different statutes. See *Martin* v. *Herzog,* 228 N. Y. 164, 168, 126 N. E. 814, 815. But usually, unless the statute sets up a special cause of action for its breach, a violation becomes an ingredient, of greater or lesser weight, in determining the ultimate question of negligence.

But this Court early swept all issues of negligence out of cases under the Safety Appliance Act. For reasons set forth at length in our books, the Court held that a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence. *St. Louis, I. M. & S. R. Co.* v. *Taylor,* 210 U. S. 281, 294; *Chicago, B. & Q. R. Co.* v. *United States, supra,* 575–577; *Delk* v. *St. Louis & S. F. R. Co.,* 220 U. S. 580. These rigorous holdings were more recently epitomized by Chief Justice Hughes, speaking for the Court: "The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one and the carrier is not

excused by any showing of care however assiduous."
*Brady* v. *Terminal Railroad Assn.,* 303 U. S. 10, 15.

Notwithstanding this Court's efforts to distinguish the safety appliance violation case from the common law negligence case, confusion of the two persists, in part, at least, due to the anomalous procedure by which such claims are litigated. This non-negligence claim, based on a statutory violation, is pursued by action under the Federal Employers' Liability Act, basically a form of action predicated only upon negligence.[5] The appliance cause often is joined with one for negligence, and even sometimes, as here, mingled in a single mongrel cause of action. In addition, at trial, certain issues such as causation and extent of injury, for example, are common to both causes of action. All of this has resulted in much borrowing of the language of negligence law to deal with Safety Appliance Act cases. And so, in an early case in which this Court held, "If this Act is violated, the question of negligence in the general sense of want of care is immaterial," we find that it went on nevertheless to say that the violation is treated "as 'negligence'—what is sometimes called negligence *per se." San Antonio & A. P. R. Co.* v. *Wagner, supra.*

In a later case, the contention in this Court involved the rule of *res ipsa loquitur,* a maxim of the law of evidence applicable in some negligence cases. The trial court had charged that from the breaking of the coupler the jury might infer negligence, which was the instruction which had been requested by the plaintiff. The railroad opposed this instruction. This Court, in an opinion an-

---

[5] Section 1 of the Federal Employers' Liability Act, 45 U. S. C. § 51, provides that "Every common carrier by railroad . . . shall be liable in damages . . . for such injury or death resulting in whole or in part . . . by reason of any defect or insufficiency, due to its negligence . . . ." And see *Seaboard Air Line R. Co.* v. *Horton,* 233 U. S. 492, 501–502.

ticipatory of this one, upheld the charge against the objection. Since the plaintiff had recovered a verdict, this Court, in affirming, found no occasion to consider whether the plaintiff would have been entitled to a more favorable charge. But the opinion negativing the railroad's objection as inconsistent with the absolute liability imposed by the Act appears in the headnote as a holding "that, in view of the Safety Appliance Act, negligence might be inferred from the mere opening of the couplers." *Minneapolis & St. Louis R. Co.* v. *Gotschall, supra.* Thus the vocabulary of negligence, appropriated to non-negligence uses, comes to dominate the thought.

We no longer insist upon technical rules of pleading, but it will ever be difficult in a jury trial to segregate issues which counsel do not separate in their pleading, preparation or thinking. We think the unfortunately prolonged course of this litigation is in no small part due to the failure to heed the admonition well stated by the Court of Appeals of the Seventh Circuit in a similar case: "Of course, it is not proper to plead different theories in the same paragraph, but it is not necessarily fatal especially when the adversary makes no objection." *Vigor* v. *Chesapeake & Ohio R. Co.,* 101 F. 2d 865, 869 (1939). Pleadings will serve the purpose of sharpening and limiting the issues only if claims based on negligence are set forth separately from those based on violation of the appliance acts.[6]

---

[6] This, after all, is the command of Rule 10 (b), Federal Rules of Civil Procedure, which provides: "All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . ."

Professor Moore, in discussing this Rule with reference to claims based upon both common law and statutory grounds, states: "Separate statement by way of counts is not required; separate paragraphing in setting out the grounds in the above actions is desirable and required." 2 Moore's Federal Practice, 2006–2007 (2d ed. 1948).

But no matter how the pleadings are allowed to stand, we think it is almost indispensable to an intelligible charge to the jury that a clear separation of the two kinds of actions be observed and impressed. The trial court in this case submitted the whole indiscriminately as a negligence case. This is hardly to be regarded as reversible error, for both counsel pleaded and tried the case as such and their requests were stated entirely in terms of the law of negligence. But the scrambling of the claims in this case illustrates how much evidence may be admitted, submitted and considered on negligence issues that, under our repeated holdings, would be immaterial in case of violation of the Safety Appliance Acts.

The plaintiff, for example, can add nothing to the liability incurred from a violation of the Act by producing evidence of negligence. Here there was affirmative and, so far as we can find, uncontradicted testimony that there was "a partial fracture on the inside of the coupler," indicating that the coupler was weakened by an old defect. However important this evidence might have been in determining common law negligence, it added nothing to the direct case under the Safety Appliance Act made by showing the breaking of the coupler.

The defendant stressed evidence that in the switching operation the coupler broke concurrently with an emergency stop. Such evidence might be material on the question of negligence. But the Act certainly requires equipment that will withstand the stress and strain of all ordinary operation, grades, loadings, stops and starts, including emergency stops. A defendant cannot escape liability for a coupler's inadequacy by showing that too much was demanded of it, nor by showing that while the coupler broke it had been properly manufactured, diligently inspected and showed no visible defects. These circumstances do go to the question of negligence; but, even if a railroad should explain away its negligence, that

is not enough to explain away its liability if it has violated the Act.[7]

Criticism is made that petitioner's requests to charge were not sufficiently specific. That they were somewhat general in statement and were cast in terms of a negligence case is true. But the Court of Appeals found these requests sufficiently specific and pertinent to the issues to present the question which it decided. And in deciding this question the way it did, we believe it has fallen into error. We make no examination of the charge insofar as it related to the issue of general negligence. As to the claim based on the Safety Appliance Act, we hold that the plaintiff was entitled to a peremptory instruction that to equip a car with a coupler which broke in the switching operation was a violation of the Act, which rendered defendant liable for injuries proximately resulting therefrom, and that neither evidence of negligence nor of diligence and care was to be considered on the question of this liability.

*Reversed.*

MR. JUSTICE FRANKFURTER, MR. JUSTICE DOUGLAS and MR. JUSTICE MINTON took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, with whom MR. JUSTICE REED concurs, dissenting.

We do not agree that the Safety Appliance Acts contain a mandatory requirement that cars used in moving

---

[7] We do not say that a railroad may never effectively defend under the Act by showing that an adequate coupler failed to hold because it was broken or released through intervening and independent causes other than its inadequacy or defectiveness; such, for example, as the work of a saboteur. And we do not find it necessary to consider a situation where an adequate coupler failed to hold because it was improperly set, since such facts are not before us.

interstate traffic must be equipped with couplers that "will remain coupled until set free by some purposeful act of control."[1] Congress might have so legislated, as it did in the section which required cars to be equipped with "efficient hand brakes; . . . ."[2] See *Myers* v. *Reading Co.*, 331 U. S. 477. However, it did not do so. Accordingly, the trial judge, on this phase of this case, was justified in omitting any instruction to the jury that, if the railroad used a car equipped with a coupler that broke in the switching operation, it thereby violated the Safety Appliance Acts.

In our view, the separating of the cars at the broken coupler was properly treated as material evidence from which the jury could infer that the railroad had violated the prohibition of the Acts against using cars "not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."[3] *Vigor* v. *Chesapeake & O. R. Co.*, 101 F. 2d 865. Cf. *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1. The jury was adequately instructed to that effect.

---

[1] *Supra,* p. 389.

[2] 36 Stat. 298, 45 U. S. C. § 11.

[3] 27 Stat. 531, 45 U. S. C. § 2.