**FREDRICKSON MOTOR EXPRESS CORPORATION, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant,**

and

**Beacon Manufacturing Company, Additional Defendant.**

**Civ. No. 1162.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Aug. 22, 1957.

Joseph W. Grier, Jr., Charlotte, N. C., for plaintiff.

Robinson, Jones & Hewson, Charlotte, N. C., for defendant Southern Ry. Co.

Carpenter & Webb, Charlotte, N. C., for Beacon Mfg. Co.

WARLICK, District Judge.

This action by plaintiff, Fredrickson Motor Express Corporation, seeks a recovery of defendant, Southern Railway Company, for damages to its tractor and trailer and for loss of use as a direct result of such property being struck by certain railway freight cars under the ownership and control of the defendant. Plaintiff claims damage in the sum of $5,150.

Plaintiff is a North Carolina corporation and is a general motor carrier for hire; defendant is a corporation chartered under the laws of Virginia. Jurisdiction is based upon a diversity of citizenship and the amount sought to be recovered. Title 28, U.S.C.A., § 1331. The Southern Railway joined as an additional third party defendant the Beacon Manufacturing Company, a Massachusetts corporation, on whose premises the alleged collision took place,—setting out that by reason of two certain existing agreements between it and Beacon it should be entitled to have judgment against Beacon Manufacturing Company for such amount, if any, that plaintiff may recover against it.

The evidence heard by me is to the effect that at the time of the alleged collision on November 1, 1955, freight was being loaded onto one of the vehicles of the plaintiff at the main plant of Beacon Manufacturing Company near Swananoah, Buncombe County, in the Western District of North Carolina; that shortly before the collision an employee of the plaintiff had backed one of its tractor and trailers up to the loading dock of said plant in such a way and manner that the tractor and trailer were standing across a side track and spur line serving the Beacon Manufacturing Company by rail. At that time plaintiff's tractor and trailer were in the customary, usual and regular place which Beacon Manufacturing Company had provided for motor carriers of freight to load its merchandise being shipped through such carriers; that plaintiff's tractor and trailer had used this same location for approximately six and one half years and that though the railway company had never given to it an express approval to the use of such location on the spur tracks for loading purposes by plaintiff or any other motor express carrier, it had not made any protest to such use, and over that period of time its various conductors had followed the practice when the side track or spur line

was about to be used, of requesting the various motor carriers, including plaintiff's employees, to move their equipment for the time being so that certain shifting operations could then go forward, and when the shifting operations of the railway were concluded for the time being the employees of plaintiff and those of the other motor freight carriers would again place their vehicles along side the warehouse platform and would resume operations.

The evidence further shows that a like situation arose and was handled twice each day as the shifting crews placed cars onto the side or spur tracks of the Beacon Manufacturing Company. The evidence indicates that the railway company has a 100 foot right of way on each side of the center line of the main track and that said right of way embraced the place where plaintiff's equipment was located at the time of the collision. The fee simple title to said property is in Beacon Manufacturing Company and the spot where the damage arose was also within a 60 foot right of way of the old North Carolina Highway, located between the main line of the railroad and the spur or side tracks. Various other trucking concerns who through the years had been selected by Beacon to transport its finished products to consignees had similarly used these facilities and at the time of the alleged collision from which it is charged that plaintiff's damage resulted, a Silver Fleet tractor-trailer unit was also parked at the loading platform of Beacon, and was being loaded with blankets packed for shipment.

Shortly before the collision plaintiff's driver, Oliver Harwood, was approached by the conductor of the defendant's train and notified to move the tractor-trailer to permit a switching operation to be made, but that within a matter of seconds and before such request could be complied with, three railway cars under the control and direction of the railroad company and which it was in the process of moving onto the spur track, became separated from the other cars which made up the train and rolled free down the spur

or side track and collided with plaintiff's tractor and trailer with such force as to virtually destroy the tractor, and doing a considerable amount of damage to the trailer.

All three of the sidetracks serving Beacon leading from the main line of the railway company were located on steep grades. The crew of the train making the switching operations and placing the cars as directed obviously engaged in various movements, all intended to set the cars in for the use of the various shippers, and in such switching the three cars became detached from the other cars and the engine. Each of the cars was equipped with automatic couplers as is required by Section 2 of Title 45 U.S. C.A., and each car likewise was equipped with hand brakes suitable to have stopped its movement if properly applied. None of the three cars involved in this controversy were to be placed on the Beacon siding but were being temporarily left on such siding in order to enable the crew to place them in front of the engine and deliver them to their destination on the Grovemont siding a mile or two east on the main line. In these shifting operations the employees of the railway company had failed to properly set the automatic couplers or to ascertain if properly working, or to apply the hand brakes while engaged in shifting these three cars, and evidently were depending entirely upon the engine to effect the necessary braking. All of the three cars were coal hoppers,—one being L. & N. No. 34736, another being Southern No. 113,-177, and the third being Southern No. 71,989. These remained connected together but broke loose from the fourth car, Southern No. 112,868, when the automatic coupling between the last two became detached, and rolled rapidly down the sidetrack. The L. & N. car was on the front. Glenn Woodward, railway flagman, was on the side of the front car, and sensing that the three had broken loose from the train, made an effort to apply the brakes but was only able to partially set the brakes on the L. & N. car. Thereupon he jumped from the cars

to save himself from the effects of the collision. Each of the cars was equipped with air brakes and the testimony of the conductor in charge of the train was to the effect that if the air brakes are properly operating and the car becomes detached from the train that there is an automatic feature about it which will apply the air brakes and effect the stopping of the car. It would then appear that had the air brakes been connected and properly operating that these cars would not have travelled far after they became disconnected, and would have stopped, thereby obviating the collision.

From the evidence offered in the case plaintiff contends that its tractor trailer was at a place designated by Beacon for receiving shipments from it for transportation to various consignees; that these loading operations had been engaged in over a long period of time; that its property was damaged through the negligence of the railway company in its switching operation, by not having its cars properly coupled, in violation of existing laws, and in failing to have the brakes on the cars being shifted on a steep grade properly set, and in negligently failing to have the air brakes operating as is required, and that finally it should recover compensation therefor by way of the damage sustained.

The railway company contends that its shifting crew was not negligent; that very often for any number of unexplained reasons automatic couplers fail to operate and to perform the work for which they are required; that in shifting it is not possible to keep the air brakes properly connected, particularly unless you are *shoving* the car, and that the plaintiff has failed to show any negligence which could be classified as proximately producing the damage complained of. The railway company further contends that if judgment should go against it, that it should be compensated by the third party defendant, Beacon Manufacturing Company, for that it, in soliciting transportation of its manufactured products, violated certain agreements entered into between it and the railway company regarding the use of warehouses located on the right of way of the railway company and in the use of the side tracks, likewise on the right of way of the railway company.

Beacon Manufacturing Company among other things contends that the agreements entered into between it and the railway company are not as contended by the railway; that it owns the fee simple title thereto, and that in its shipping operation it was not in any wise denied the right to have motor carriers on its premises to load from the platform along side its warehouses; that it had not in any sense contracted to absolve the railway company for its negligence as herein, and that the damage allegedly suffered by plaintiff is the proximate result of the railway's negligence, arising from its switching operations in this instance.

The evidence discloses that on April 23, 1948, the Railway Company and Beacon Manufacturing Company entered in to a side track agreement having to do with the placing of three side tracks, all as is shown on certain blueprints dated July 3, 1947, and revised on March 2, 1948, and which are in evidence. That its contract obviously embraces all of the agreements between the Railway Company and Beacon with respect to the side tracks as originally placed and subsequently maintained. It further appears that the Railway Company and Beacon entered into a lease agreement dated the 23rd day of May, 1950, having to do principally with the lease of four certain parcels of real estate on the right of way of the Railway Company, and which was being used by Beacon, the fee simple owner, and on which Beacon had previously erected warehouses, buildings, guard houses, platforms, and certain fencing all for the better enjoyment of its property and for protection of articles thereon. Among the terms of this lease agreement are to be found certain sections which the Railway Company contends are of such contractual effect as to absolve it of any responsibility in this

or any other case arising thereunder. These three sections are as follows:

"2. That it will use said premises for the maintenance thereupon of said buildings, guard houses, platforms and fencing, and for the storage and handling of freights forwarded or received by the Licensee over the lines of the Railway Company and its connections, and will use the same for no other purpose.

"3. That this license is a personal privilege to the Licensee hereunder, and shall not be transferred or assigned without the consent, in writing, of the Railway Company; nor shall the Licensee, without such consent, permit the said premises to be used for any purpose by any other person.

"9. That the Licensee accepts the privilege hereby granted with the full knowledge and understanding that any property stored, placed or located *by or with the consent of the Licensee* upon said right of way is subject to the risk of destruction or damage by fire set out by locomotives operated on the railroad of the Railway Company, or may be otherwise damaged or destroyed or may be stolen; and agrees, in consideration of this privilege that the privilege is to be used and enjoyed solely at the risk of the Licensee, and that the Railway Company shall not be responsible to the Licensee or others for any such loss or damage, whether the same results from the negligence of the Railway Company or otherwise."

From the above findings of fact it would appear that three questions are presented:

"1. Was the plaintiff's property damaged by the negligence of the defendant, Railway Company, as is alleged?

"2. If so, what damage is plaintiff entitled to recover?

"3. Is Beacon obligated under its contract with the Railway Company to save it harmless from the judgment rendered?"

The measure of duty owed by the Railway Company to the plaintiff must be determined by establishing the status of the plaintiff at the time of the alleged collision and subsequent injury, and the degree of care to be exercised by the owner of premises to the person coming upon said premises, depends in the last analysis upon the attendant facts and circumstances. Surely plaintiff was upon said premises as an invitee of Beacon Manufacturing Company and to contend otherwise would be destructive of the truth. Assuming that plaintiff had no express authority from the Railway Company to be upon said premises and that its contract with Beacon to haul its products in a measure deprived the Railway Company of the right of transporting said goods, it would certainly appear that the Railway Company had an implied knowledge of such transactions since the operators of its trains twice daily shifted these sidings and knew of the almost continuous presence of plaintiff's vehicles at the loading platform, and being aware of such position over a period of six and one half years would indicate at least its full acquiescence and this knowledge certainly would classify plaintiff, in so far as the Railway Company is concerned, as a licensee in any event and not a trespasser.

The rule in North Carolina is aptly stated as follows:

"Thus, the measure of care due by an owner of premises varies with respect to whether the person upon the premises is a trespasser, a bare or permissive licensee, merely for his own convenience, pleasure or curiosity, or upon the premises by virtue of some invitation or inducement from the owner, either express or implied. The general rule is that a trespasser or permissive or bare licensee upon the property of another cannot recover for defects, obstacles

or pitfalls upon the premises, unless the injury shall result from willful or wanton negligence. Quantz v. Southern R. Co., 137 N.C. 136, 49 S.E. 79; Peterson v. South & W. R. Co., 143 N.C. 260, 55 S.E. 618, 8 L.R.A.,N.S., 1240; Briscoe v. Henderson Lighting & Power Co., 148 N.C. 396, 62 S.E. 600, 19 L.R.A.,N.S., 1116; Bailey v. North Carolina R. Co., 149 N.C. 169, 62 S.E. 912; Monroe v. Atlantic Coast Line R. Co., 151 N.C. 374, 66 S.E. 315, 27 L.R.A.,N.S., 193; Money v. Travelers' Hotel Co., 174 N.C. 508, 93 S.E. 964, L.R.A. 1918B, 493; Jones v. Bland, 182 N.C. 70, 108 S.E. 344, 16 A.L.R. 1383.

"Upon the other hand, if a person enters upon the premises of another by reason of express or implied invitation, the owner is bound to exercise ordinary care for his safety. In discussing this aspect of the law, Bigelow, C. J., in the Sweeny Case, supra [Sweeny v. Old Colony R., 10 Allen, Mass., 368], says: 'The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby.' Whitley v. Southern R. Co., 122 N.C. 987, 29 S.E. 783; Morrow v. Atlanta & C. Air Line R. Co., 134 N.C. 92, 46 S.E. 12; Fortune v. Southern R. Co., 150 N.C. 695, 64 S.E. 759; Leavister v. Jesse French & Son Piano Co., 185 N.C. 152, 116 S.E. 405.

"The strict rule exempting the owner of premises from liability to a licensee is ordinarily applied when the negligence of the owner is passive. If the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained as a result of such active and affirmative negligence." Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125, 127, 49 A.L.R. 773.

It would therefore appear that the negligence of the Railway Company was active and affirmative in that having said cars under its control and direction —shifting them on tracks of steep descent, and failing to properly couple the three cars to the other cars making up the train and thereby permitting them to become uncoupled and to run away, clearly violates the Safety Appliance Act as these facts indicate. The purpose of the Safety Appliance Act was stated by Mr. Justice Jackson in O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 203, 94 L.Ed. 187: "We hold that the Safety Appliance Act requires couplers, which after a secure coupling is effected, will remain coupled until set free by some purposeful act of control." Then again making this particular shift of the cars without the use of air brakes, though they had previously been used, in a portion of the operation at the time in question, and failing to properly set the hand brakes, all leads one to the conclusion that the employees of the Railway Company were negligent in the operation of said train and thereupon breached the duty owed to plaintiff.

Giving thought to the questions stated, I am of the opinion that plaintiff's property was damaged by the negligence of the Railway Company in the shifting operations of its employees and that such negligence proximately produced the damage sustained. That plaintiff should recover the sum of $3,750, in full satisfaction.

I further am of the opinion that the conditions of the lease agreement are not availing to the defendant Railway Company, but its Side Track Agree-

ment of April 23, 1948 is controlling as between such defendants, and this would afford the Railway Company no relief as against Beacon Manufacturing Company.

Judgment accordingly.