## CRADDOCK v. JONES et al.
### No. 1047.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Harvey E. Ellis and Frank B. Ellis, both of Covington, for appellant.

Carter & Carter, of Franklinton, and B. M. Miller, of Covington, for appellees.

ELLIOTT, J.

Morris Craddock, alleged that Volladay Jones, William Brown, Norman Holliday, Willie J. Sheridan, Junius Lagarde, and George Lagarde, each aiding and assisting the other and conspiring altogether, did, on or about 11 o'clock p. m. at night some time in October, 1930, take, steal, carry away, and convert to their own use a yoke of oxen belonging to him, worth $225; that the loss of said oxen and their value, all the expense incurred and loss of time in searching for said oxen and loss of the use of said oxen, as shown by a detailed and itemized account annexed to and made part of his petition, was due to the act of said defendants in unlawfully taking his oxen and disposing of same beyond the hope of recovery; that the damage he has sustained in the way stated amounts to $703.50.

The answer of the defendants is in effect a general denial. Plaintiff's demand against William Brown was refused and rejected, but there was judgment in favor of the plaintiff, Craddock, and against the defendants Volladay Jones, Norman Holliday, Willie J. Sheridan, Junius Lagarde, and George Lagarde in solido for $200. Plaintiff has appealed.

In the petition, the name of the defendant Jones is stated to be Volladay Jones, in his answer it is spelled Volliday Jones, but in a check which he offered in evidence the name of the same individual is spelled Valadi Jones, and the check is indorsed by him in that way. We therefore take it that the name of this defendant is Valadi Jones.

This defendant, Valadi Jones, alias Volladay, alias Volliday, appeared and filed an answer to the appeal in which he prays that the judgment appealed from against him be reversed, and that plaintiff's demand in so far as he is concerned be rejected; but, in the alternative, and in case the court does not reject the demand against him, that in that event the judgment against him be reduced to $23.65.

The lower court refused plaintiff's demand against the defendants for damages on account of the loss of the use of his team, his expense in searching for the oxen, and his other expenses incurred in an effort to recover them before he discovered that they had been stolen and carried from the parish of St. Tammany into another parish and converted in such a way that they could not be recovered back, allowing him to recover only their value.

■ The judge in his written reasons for judgment refers to the evidence against Brown, saying that the only evidence connecting him with the tortious conversion of the oxen is the fact that he was working for Jones and was hired by Jones to assist in

driving a truck for him. His liability has not been proved. We do not review this finding, because the only reference plaintiff makes to the ruling is the statement in his brief, in which he says: "The testimony as to Brown is to the effect that he was simply driving Jones' truck when the oxen were taken, and the court dismissed the suit as to him." There is no request that the judgment rejecting his demand against Brown be reversed. Consequently, we do not review the case as against Brown. But, as for Jones, the court has this to say: "Disregarding the statements made by the other defendants, implicating Jones, the remaining proof as against him tending to show that he assisted in stealing the oxen is largely circumstantial. It might be said here that the circumstances under which he got possession of the oxen, at night, in a rather secluded place, the manner of taking them off, makes the acts of Jones look very suspicious, to say the least. It remains a fact that the oxen were stolen and the title to plaintiff has never been divested. Even though defendant Jones paid the $50.00 for the oxen, which he claims, there is no question but that plaintiff would have a right to regain possession of his property in the hands of Jones, had he been able to locate them before they were killed or died. He would have had this right irrespective of the good or bad faith of Jones. It is the general rule that a person who buys stolen property for value and in good faith and converts them to his own use, is nevertheless liable to the owner for their value. Under this rule Jones is liable to plaintiff for the value of the oxen, whether or not he acted in good or bad faith."

As for the other defendants, no brief has been filed in their behalf. The lower court considered the case against them as established beyond question, and the record shows that such was done; consequently no serious defense was attempted in their behalf.

■ The defendants Holliday, Sheridan, and the two Lagardes were not called as witnesses. The lower court received in evidence against themselves their declarations concerning the stealing of the oxen, confessing their guilt and implicating Jones, making him equally as guilty in the criminal act as themselves. But, at the time these statements were made, Jones was not present, and nearly six months had elapsed since the taking; the object of the conspiracy had been achieved, and the purpose for which it had been entered into had been accomplished. After receiving the evidence, the court properly refused it effect against Jones.

■ But we differ with the lower court when it says that the evidence against Jones creates against him only a very suspicious case.

William Brown and the defendant Jones appeared as witnesses on the trial of the case; Brown testified, and Jones admitted, that he (Jones) was present in the parish of St. Tammany at the time and place when the oxen were delivered to Jones.

The oxen were loaded into Jones' truck, and the truck driven from the Parish of St. Tammany at night to a remote and out of the way place in another parish nearly 100 miles distant, where the oxen were unloaded. They gave plausible explanations concerning their conduct. They claim that Jones bought the oxen from Sheridan, paying him $50 by check therefor. Under the evidence, admissible against Jones, it was not shown that the oxen were covered by a tarpaulin. Their claim that the oxen were in poor condition at the time and that $50 was a fair price for the oxen, and the evidence of the witnesses called to support their claim in that respect, and that a check drawn on sheriff's salary fund payable to Valadi Jones and indorsed by him was given by Jones to Sheridan, according to Brown and Jones, in payment for the oxen, has all been considered. The established facts and circumstances, all considered, have convinced us that Jones, Holliday, Sheridan, and the two Lagardes were all engaged in a criminal enterprise, as alleged in the petition, and that all are equally responsible for what was done and must be made to equally bear the consequences.

We look on the case as established against Jones beyond a reasonable doubt, and therefore hold him responsible with the others in solido on that account. The lower court held that plaintiff could recover nothing beyond the value of his oxen. The cases, Reynolds v. Reiss et al., 145 La. 155, 81 So. 884, and Hitt v. Herndon, 166 La. 497, 117 So. 568, are cited in the opinion of the court as supporting that position, and there are others to the same effect. These cases announce a general and well-established rule, but applicable to situations which may be differentiated from the present.

■ We are firm in our conviction that, under the law, a party who steals property, such as a yoke of oxen, the tongue yoke in a team of 4 yoke, is under a personal obligation to the owner of the oxen to make good, not only the value of the yoke of oxen, but the actual expense which the owner, acting honestly and in good faith, is impelled to go in an effort to find his oxen, before he becomes aware that they have been stolen, carried away, and converted beyond the hope of recovery. The obligation to make good the loss is imposed as a matter of law. Code Practice, art. 31 and Civil Code, art. 2292.

The article 2315, which provides that: "Every act whatever of man that causes damage to another, obliges him by whose fault it

happened to repair it," intends full reparation.

The Code Practice, art. 31, expressly provides reparation for theft, and likewise intends full reparation. Code Practice, art. 3, defining a personal action, says: "A personal action is that by which a person proceeds against one who is personally bound towards him, either by a contract or by virtue of the law, in order to compel him to pay what he owes to him, or to perform what he has promised."

Under these articles of the Civil Code and Code Practice, a party guilty of stealing cannot be permitted to take advantage of his own wrong in such a way as to escape paying to the owner of the property stolen a reasonable sum on account of his time spent in the reasonable effort to find and recover the property before he becomes aware that it has been stolen, carried away, and converted beyond the hope of recovery. And, when the owner in this case, unsuccessful in finding his oxen after searching for 23 days on the open range, where he had a right to suppose they were, standing in great need of them, hires another man at an expense of $72 to help him search, all before he has learned of the taking and conversion beyond the hope of recovery, and who has been, as a result of the theft, rendered unable to operate his team in hauling, a means of livelihood during the latter part of the fall, the winter, and early spring, he is entitled to have his loss and expenses repaired. Such, we hold, is the provision of our law on the subject.

The Civil Code, art. 1934, subd. 3, after provisions which have reference to contracts, has this to say: "In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as willfully indemnify the creditor, whenever the contract has been broken by the default, negligence, fraud or bad faith of the debtor."

In the case Mary D. Cooper v. Cappel, 29 La. Ann. 213, the syllabus reads in part: "In a suit for damages on account of a trespass the trouble and expense the plaintiff has been illegally put to are to be considered in estimating the damages. Attorney's fees are a part of such expense, and may be proved, even when they have not been specifically alleged."

In the body of the opinion the court said, in acting on a defense evidently much like that pressed on us by the defendant Jones: "It is certainly a new idea, and one which we can not sanction, that, in an action for assaulting and shooting at a man, and for taking forcibly and violently and carrying away property which was lawfully in his possession, whether in his own right or in right of another, the measure of damages is the value of the property."

In Chamberlain v. Worrell, 38 La. Ann. 347, the court, acting on a conversion case referring to the rule that the measure of damages in actions for a tortious conversion, was the value of the property, said: "The rule is not without exceptions, as where the conversion is accompanied by violence or personal outrage, or where other damage is shown to have resulted clearly and directly from the wrongful act."

In Kernan v. Humble, 51 La. Ann. 389, 25 So. 431, the subject of damages in the form of expenses caused by the commission of a criminal act and in the effort of a party to protect his property, are considered at length, and the court held that reasonable and necessary expenses incurred for such a purpose could be recovered of the wrongdoers in solido.

From Ruling Case Law, vol. 8, Subject Damages, § 57, we copy as follows: "Generally in tort actions the injured party may recover for reasonable expenses necessarily incurred by him for the reasonable expenditures made by him in an attempt to avoid or lessen his damages, provided of course, they are the proximate result of defendant's wrongful act. It has been held that one may recover for expenses incurred in searching for, reclaiming or replacing property wrongfully taken from him."

In this case it was error on the part of the lower court not to allow the plaintiff to recover a reasonable sum for his own time and labor expended in his effort to find his oxen, the sum he is shown to have expended in hiring others to assist him when his own efforts failed, he not being aware at the time that the oxen had been stolen and carried away and could not be recovered, and standing in need of them to complete his team.

■ The evidence shows that plaintiff spent 23 days in searching, and we think $2.50 per day a fair value for his time, a total of $57.50. Being unsuccessful, he hired Zeno Crawford, who searched for 24 days and was paid at the rate of $3 per day, making a total of $72. He paid two other parties $1 each for service rendered in his search, making in all $131.50.

He testifies that, if his oxen had not been stolen, he would have been able to use his team in hauling during the fall and winter and early spring, and that without this yoke he was unable to use his team for the work which he desired to do, and that, if he had been able to engage in the work, he would have earned $173.

■■ We do not think this claim for earning, had he been able to use his team, too remote and uncertain to justify allowing it. To us it seems a loss that should be repaired. But the other items claimed in the account

are in the main expenses incurred in having the accused parties arrested after he had learned of the theft. We feel that they were not proper items for recovery.

■ The preponderance of the testimony on the subject of the value of the yoke of oxen at the time they were stolen indicates a larger sum than $200, but we are unable to say that the court erred in fixing their value at that amount. The items of expenses, damages, and losses above mentioned, added to the value of the oxen, makes a total of $504.50, and for this amount the plaintiff is entitled to judgment against the defendants in solido.

For these reasons the judgment appealed from in favor of the plaintiff Morris Craddock and against the defendants Valadi Jones, Norman Holliday, Willie J. Sheridan, Junius Lagarde, and George Lagarde is increased from $200 to $504.50, and the said defendants are condemned for said amount in solido.

As thus amended and corrected, the judgment appealed from is affirmed.

The demand of the defendant Jones, in answering the appeal, is refused and rejected.

Defendants-appellees pay the cost in both courts.