236 F.2d 32
 Michael R. PLASTINO and Ruth C. Plastino, Appellants,
v.
Estber MILLS and Edna Mills, Husband and Wife; Ray Douglas and Pauline Douglas, Husband and Wife; Sigmund Wendling and Dorothy Wendling, Husband and Wife; Loran D. Harveston; Lyle Simmons, George Hodgdon, C. K. Warren and Oscar Tittle, Appellees.
 No. 14789.
 United States Court of Appeals Ninth Circuit.
 July 31, 1956.
 
 Robert R. Rankin, Portland, Or., for appellants.
 Irving Rand, William C. Ralston, Portland, Or., George P. Winslow, Tillamook, Or., for appellees.
 Before STEPHENS, BONE and CHAMBERS, Circuit Judges.
 CHAMBERS, Circuit Judge.
 
 
 1
 On November 7, 1945, Mills and wife as vendors, by written contract agreed to sell on monthly installment terms to R. F. Hogan and Sally Hogan a forest tract in Tillamook County, Oregon. Within three months thereafter the Hogans transferred to Michael R. Plastino and Ruth C. Plastino their interest as vendees. The Plastinos were the plaintiffs below and are appellants here.
 
 
 2
 Early in the life of the Mills-Hogan contract the Plastinos' performance became rag tag. This seems to have been with the written assent of Mills. However, the contract had a strict forfeiture clause in it providing that one waiver of a late payment should not be construed as a waiver of another late payment or held to change the terms of the bargain.
 
 
 3
 Late in January, 1951, Mills wrote the Plastinos that because of their failure to pay installments he was terminating the contract pursuant to its terms and forfeiting their interest as successors to the original vendees. Almost simultaneously the Plastinos tendered a payment of $25.00, the amount they had been accustomed to send the vendors each month when they were financially able to do so. This payment was refused by Mills and promptly returned.
 
 
 4
 After January, 1951, and before December, 1953, much of the timber standing on the forest lot was removed by several of the defendant-appellees who were doing business with each other or with Mills. Apparently, the defendant-appellee Tittle dug a road on a portion of the property at the direction and employment of one of the defendants. And, it seems, after removing the logs, no one cleaned up the lot.
 
 
 5
 In the late summer of 1953 the Plastinos made a tender of $675.00 and demanded a deed from Mills. This was refused.
 
 
 6
 Later in December, 1953, the Plastinos tendered the sum of $925.90 into court and along with it filed their complaint against Mills and those who had played some part in going upon the land or removing or cutting timber. Plaintiffs sought damages from all defendants and specific performance from Mills and his wife. All defendants appeared and answered.
 
 
 7
 The complaint is 16 pages long, not counting the exhibit which seems to have been properly attached. A thrifty pleader might have used two pages for the complaint. Surely a verbose one ought to finish in four pages. The pleadings were followed by a pre-trial order of 32 pages, apparently agreed upon by the parties. The trial judge accommodatingly signed it.
 
 
 8
 At the end of the pre-trial order there occurs a phrase whose first natural habitat seems to have been the District of Oregon, which announces, "And the pleadings now pass out of the case."[1] The pleadings might pass out here unmourned, but the trouble is the pre-trial order is so badly drawn that it would have been far better to have proceeded to trial on the pleadings. The only possible good this particular trial order did was to get some exhibits identified.
 
 
 9
 Defendants make jurisdictional objections. There seems to be the requisite diversity of citizenship, but if one looks for the requisite "exceeds three thousand dollars" one gets hopelessly twisted up in the tangled pre-trial order, the chronology of which sometimes even doubles back on itself. We have tried to put some jurisdictional calipers on the pre-trial order, but we give up.
 
 
 10
 We cite one example: The plaintiff states the value of the property was $4,000 on the date the defendant Mills announced forfeiture. The date is of no importance. The value of the property as of the date the complaint was filed might be of some consequence.[2]
 
 
 11
 One may applaud the objective of the Federal Rules of Civil Procedure, 28 U.S. C.A., which is to abolish the technicalities of pleading. But the rules didn't abolish the necessity for clear thinking. One can spend a day on the pleadings and the pre-trial order here without coming up with any definite idea of how many claims the plaintiff asserts successively or alternatively.[3]
 
 
 12
 The trial court wrote an opinion in the case. It contains an understatement as follows:
 
 
 13
 "My task has not been simplified by the pleadings in this case. The complaint sets out in great detail evidentiary matters, and these are repeated and elaborated upon in the pre-trial order. Instead of simplifying the issues, they were made more complicated. The voluminous briefs continued the process.
 
 
 14
 "However, in spite of this mass of material, I have carefully considered each contention made in the pleadings, as well as in the briefs."
 
 
 15
 Obviously, the trial judge felt that having married the pre-trial order brought him by the parties, he had to live with her. This court of appeals does not have to do it and has determined that it will not. Upon the ground that the pre-trial order never became sufficiently definitive for a trial, the case will be remanded.
 
 
 16
 Rules 8(a) and 10(b) are especially recommended to counsel along with all of the other rules of the Federal Rules of Civil Procedure.
 
 
 17
 Parenthetically, we think it should be noted that if this court had overcome all other considerations involved in the case, reversal might be required because of the trial court's findings and conclusions obviously prepared by counsel. Specifically, we refer to the issue of abandonment.[4] The court found an abandonment by the vendees in a six day period about February 1, 1953. This is clearly erroneous. We do not reach the issue of abandonment, but we do say that it is clear that this is just the one period where it can almost be said positively that the Plastinos didn't abandon anything. The finding is in conflict with the trial court's opinion. This, it must not have intended. But in a direct conflict between the formal findings and the findings of an opinion, the formal findings must govern. And of course, a later date of abandonment than the findings said, if such abandonment there was, might present some questions of what became of a claim for damage to property, if some damage had accrued at the time of abandonment of the property.
 
 
 18
 The judgment is vacated. The trial court will set aside the findings and conclusions along with the pre-trial order and start over. Perhaps all or part of the testimony taken can be salvaged.
 
 
 
 Notes:
 
 
 [1]
 Criticism of the technique is not intended. But it may be observed that nothing is gained by bidding "good-bye" to the pleadings if the pre-trial order is a poorer product than the pleadings
 
 
 [2]
 In the pre-trial order there are some rather loosely coupled charges of "confederation," perhaps born of a belief (maybe correctly, maybe not) that some damage items would have to be taken together to produce the jurisdictional amount. But when the pre-trial order gets into details of the alleged wrongs, then how some defendants would be held for the wrongs of some others over and beyond their own becomes a little fuzzy
 
 
 [3]
 The defendant Mills early, and in writing, consented to the receipt of some late payments. But one cannot tell from the pleadings whether the plaintiff was contending that this made some kind of a new modified contract, that this was some sort of valid waiver, or laid some foundation for some variety of an estoppel. If some such theories are claimed alternatively, one should say so
 
 
 [4]
 There should be a clearer showing in the findings and conclusions than there is as to why plaintiffs lost their interest by forfeiture, if they did. After that, then the issue of abandonment may be reached