317 F.2d 859
 BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, a National Banking Association, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 18142.
 United States Court of Appeals Ninth Circuit.
 May 24, 1963.
 
 Samuel B. Stewart, Robert H. Fabian and Alfred T. Twigg, Los Angeles, Cal., for appellant.
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner and Fred E. Youngman, Attorneys, Department of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., Walter S. Weiss, Asst. U. S. Atty., Chief, Tax Section, and Herbert D. Sturman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.
 Before CHAMBERS and BARNES, Circuit Judges, and WEIGEL, District Judge.
 CHAMBERS, Circuit Judge.
 
 
 1
 J. B. Edmondson in August, 1959, was a customer of the Bank of America at its West Orangethorpe Road office in Fullerton, Orange County, California. Credit balances owed him by the bank on August 27, 1959, which, if there were no liens or set-offs, all would agree, amounted to $6,658.31.
 
 
 2
 Dating from 1955 to and including August 27, 1955, the government (the Internal Revenue Service) had balances due from the bank's customer Edmondson in excess of eight thousand dollars plus interest on three assessments made in 1955 for deficiencies in taxes for that year, either payroll withholding or F.I.C.A. (i. e. social security) payable in 1955 for the first three quarters thereof. The process of making the assessments, notifying the taxpayer Edmondson of the assessments and filing notices of lien in the recorder's office of Orange County, California, was all completed by January 28, 1958. Then on August 27, 1959, the date herein mentioned at the outset, the District Director of Internal Revenue served a notice of levy upon the bank upon "all property or rights to property belonging to" Edmondson. Thereafter a final demand was made upon the bank. This was refused and on April 11, 1961, the United States sued the Bank of America for its book balances of $6,658.31 as of August 27, 1959, in favor of Edmondson.[1]
 
 
 3
 Very promptly and on August 28, 1959, the bank proceeded to protect itself by asserting a right of set-off against Edmondson. It made bookkeeping entries disposing of the customer's previous balance of $6,658.31 as follows:
 
 
 4
 1. On "boat mortgage" indebtedness
 of Edmondson
 to the bank ........................ $1,130.68
 2. On unsecured note .................. 1,230.10
 3. On four of five conditional
 sales contracts assigned
 by Edmondson to the bank ........... 4,297.53[2]
 _________
 Total $6,658.31
 
 
 5
 The question of the case is whether the bank's self-help here was grounded on its legal right under applicable statutes, or did the federal levy get in between Edmondson's rights against the bank and the bank's rights against Edmondson.
 
 
 6
 After a "Pre-trial Stipulation of Facts and Statement of Contentions and Issues" was signed by the parties, each made a motion for summary judgment for the sum of $6,658.31. The trial court granted the government's motion. The bank appeals.
 
 
 7
 We have here a case which is obviously related to our case of Bank of Nevada v. United States, 251 F.2d 820, but as of now one has difficulty in determining whether it is a sister case or a case of third cousins twice removed. The trouble is in the stipulation and pre-trial order.
 
 
 8
 The exact nature of Edmondson's liability to the bank under the conditional sales contracts (apparently the seller's ends of the contracts were assigned to the bank) is not shown. The debt on the boat is described as "boat mortgage." The note is described as "unsecured note." Where reference is made to the conditional sales contracts two items of $132.33 and $52.14 called "unearned time price differential" are inserted. In simple English one can assume this pretty phrase means "unearned interest."
 
 
 9
 This court is not satisfied that the stipulation tells clearly how or when the balances became due. The bank thinks it is clear enough one way. The government does not agree and thinks it clear another way.[3]
 
 
 10
 The court is of the opinion that the stipulation just does not tell enough "who, what, when, where and how" for the trial court or this court to make a definitive ruling. There is enough chance of error if the facts are fully developed.
 
 
 11
 It would appear that there still is little likelihood of a dispute as to the actual facts and that the matter could be handled on a more comprehensive stipulation. Certainly a stipulation should include and could be entered into as to copies of all the bank records and documents showing how and when the liability of Edmondson to the bank came about. Eventually it may be decided that the contents of the conditional sales contracts, the boat mortgage, and the unsecured note are not too important. But let the court decide that.
 
 
 12
 The judgment along with the findings and conclusions of the trial court are vacated. The case is remanded for proceedings consistent with the foregoing opinion. See Plastino v. Mills, 9 Cir., 236 F.2d 32.[4]
 
 
 
 Notes:
 
 
 [1]
 The sequence of how Edmondson acquired the balances in accounts for a total of $6,658.31 is set forth in an affidavit which accompanied the bank's motion for summary judgment
 
 
 [2]
 The asserted set-off did not fully satisfy the claimed balance on the fourth conditional sales contract and did not reach the fifth
 
 
 [3]
 During oral argument approximately an hour was spent by the court in colloquy with counsel as to what the stipulation meant. Counsel had diverse but positive notions. The court was in doubt as to the basic facts on the claimed offsets
 
 
 [4]
 Plastino v. Mills, supra, is a case at the other end of the spectrum. There a simple story was expanded into an overlong and confused discourse which at points was within itself contradictory. But in both cases, Plastino and Bank of America, the stipulation or pre-trial order can be said to be not sufficiently definitive