**Leo ROLLINS, Appellant,**

v.

**Hans M. LEIBOLD, Appellee.**

**No. 1646.**

Supreme Court of Alaska.

July 25, 1973.

---

Kenneth P. Jacobus of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

J. L. McCarrey, Jr., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

## OPINION

BOOCHEVER, Justice.

This appeal involves the right to title and possession of a Bay City crane, and damages for the alleged wrongful withholding of the crane from the rightful owner. The appellant, Rollins, claims title through a sale from the estate of Ira Rothwell; the appellee, Leibold, claims title through a sale from Donald Murphy, a purchaser from the deceased Rothwell.

Ira Rothwell purchased this crane from the State of Alaska in 1963, and sold the crane to Donald Murphy in July 1966. Ira Rothwell died in November 1966, and in October 1967 Sylvia Rothwell, as executrix of the estate of Ira Rothwell, sold the crane to Leo Rollins, the appellant.

Donald Murphy, having purchased through Ira Rothwell, sold the crane in November 1967 to Hans Leibold, the appellee, who brought suit in the spring of 1968 against Donald Murphy, Leo Rollins and Sylvia Rothwell for title and possession of the crane plus damages. Donald Murphy was not served and did not take part in the action.

The jury in the superior court found in favor of Leibold, and awarded Leibold damages of $2,800 plus interest for the value of the truck crane against both Rollins and Sylvia Rothwell, and $13,500 plus interest for loss of use against Rollins. Rollins is appealing this judgment, alleging that the conveyance from Rothwell to Murphy was fraudulent as a matter of law, and attacking the theories used to determine damages and the total amount as unjust and excessive. Sylvia Rothwell satisfied the portion of the judgment against her and does not take part in the appeal.

Rollins argues on appeal that he was a good-faith purchaser for value; and that since there was no actual change of possession of the crane shown by the evidence, the transaction between Ira Rothwell and Murphy was presumptively fraudulent

against Rollins under AS 09.25.060[1] and, therefore, should be ruled void. The appellee, Leibold, contends, however, that this issue of fraud must be pleaded as an affirmative defense before or during trial, or it is waived; and that since it was not properly raised in this case, the lower court's instruction pertaining to AS 09.25.-060[2] was erroneously given, and the issue should not have been considered below, nor should it be at issue here.

Rule 8(c) of the Alaska Civil Rules requires a party to plead affirmatively fraud as a defense,[3] and failure to so plead results in a waiver of the defense.[4] This general rule goes unquestioned in this case, having been submitted by Leibold and conceded by Rollins. The preliminary question raised by Rollins, however, is whether the presumption of prima facie fraud established by AS 09.25.060 should be construed as an affirmative defense in the same manner as actual fraud.

▪ An affirmative defense can generally be defined as new matter not set forth in the complaint which constitutes a defense; or new matter which, assuming the complaint to be true, is a defense to it.

1. AS 09.25.060 provides:
   *Sale or transfer of personal property.* Every sale or assignment of personal property unless accompanied by the immediate delivery and the actual and continued change of possession of the thing sold or assigned is presumed prima facie to be a fraud against the creditors of the vendor or assignor, and subsequent purchasers in good faith and for a valuable consideration during the time the property remains in the possession of the vendor or assignor, except that retention of possession in good faith and current course of trade by a merchant seller for a commercially reasonable time after a sale or identification is not fraudulent, and nothing contained in this section shall supersede the provisions of the Uniform Commercial Code (AS 45.05).

2. Instruction No. 9A provided:
   You are instructed that the law of Alaska, under AS 45.05.130(a) reads as follows:
   Sec. 45.05.130. Power to transfer; good faith purchase of goods; "entrusting."
   (a) A purchaser of goods acquires all title which his transferor has or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though
   (1) the transferor was deceived as to the identity of the purchaser;
   (2) the delivery was in exchange for a check which was later dishonored;
   (3) it was agreed that the transaction was to be a "cash sale"; or

   (4) the delivery was procured through fraud punishable as larcenous under the criminal law.
   And that AS 09.25.060 provides in pertinent part:
   Sec. 09.25.060. Sale or transfer of personal property.
   Every sale or assignment of personal property unless accompanied by the immediate delivery and the actual and continued change of possession of the thing sold or assigned is presumed prima facie to be a fraud against the creditors of the vendor or assignor, and subsequent purchasers in good faith and for a valuable consideration during the time the property remains in the possession of the vendor or assignor . . .

3. Alaska Civil Rule 8(c) provides:
   *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, *fraud,* illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.* When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation. (Emphasis added.)

4. See rulings under identical Federal Rule of Civil Procedure. Lopez v. United States Fidelity & Guar. Co., 15 Alaska 633, 18 F.R.D. 59 (1955); Kroon v. Maxwell, 297 F.Supp. 277, 279 (E.D.Pa. 1969), aff'd 423 F.2d 680 (3d Cir. 1970).

It also can consist of matter which avoids the action, and which the plaintiff does not have to prove at the outset in support of the action.[5] A statutory presumption of fraud, similar to fraud, falls within this definition since a simple denial of the complaint would not raise such a defense. The only effect resulting from it being a statutory presumption is that the party asserting fraud does not have to introduce evidence of fraudulent intent. He still must plead and prove the conditions necessary to invoke the presumption—in this case, that the sale was presumptively fraudulent against him, a "subsequent purchaser in good faith and for a valuable consideration," due to the lack of "immediate delivery and the actual and continued change of possession of the *thing sold or assigned.*" A statutory presumption of fraud thus should be considered an affirmative defense, subjecting the party to the requirement of Civil Rule 8(c) that such a defense be specially pleaded.

Since the defense was not affirmatively pleaded by Rollins, this court must determine whether there is some other proper basis for considering it. The record from the lower court reveals that Rollins in his amended answer raised the affirmative defense that he was a good-faith purchaser for value and had no knowledge of the transactions between Ira Rothwell, Murphy and Leibold at the time that he purchased the crane. This defense

of being a bona fide purchaser has been held to be in itself an affirmative defense,[6] however, and consequently Leibold would not be given sufficient notice of the issue of fraud from such an affirmative pleading. In this case, though, the other defendant in the superior court, Sylvia Rothwell, raised as an affirmative defense that the purported sale between Ira Rothwell and Murphy was null and void due to a failure of transfer and failure of consideration. Leibold thus was on notice that the defense that the sale was ineffective due to the lack of delivery and change of possession of the crane would be raised at trial. Since these are the factual bases for the statutory presumption of fraud, it does not appear that he was prejudiced by the raising of the issue and the resulting instruction of the court.

Even if the issue of fraud had not been raised in the pleadings of the parties, Rollins is still entitled to review of the issue on appeal if the issue was tried by the express or implied consent of the parties, under Alaska Civil Rule 15(b).[7] Since the affirmative defense had been placed in issue by Sylvia Rothwell and the Rollins claim of title to the crane was derived from her, it would be overly technical to say that the issue was tried "by the express or implied consent" of the parties with reference to Mrs. Rothwell, but not so tried with reference to Rollins.[8] Moreover, at the conclusion of Leibold's case,

5. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1271 (1969); 2A J. Moore, Federal Practice ¶ 8.27 [3] (2d ed. 1972).

6. 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1271, at 305 (1969), *citing* Natural Resources, Inc. v. Wineberg, 349 F.2d 685, 688 n. 3 (9th Cir. 1965), and at 310, *citing* United States v. Demmon, 72 F.Supp. 336 (D.C.Mont. 1947).

7. Alaska Civil Rule 15(b) provides:
   (b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such

amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . . *See also* Gilbert v. Sexton, 401 P.2d 300, 302 (Alaska 1965); Harris v. Deveau, 385 P.2d 283, 285–286 (Alaska 1963).

8. Our procedural rules should be interpreted liberally in order to avoid determination based on technicalities. *See* Alaska Civ.R. 1; 4 C. Wright & A. Miller, Federal Practice & Procedure § 1029, at 124–30 (1969) (analyzing the similar Federal Rule of Civil Procedure 1).

Rollins' counsel made a motion for a directed verdict for Rollins on the basis of AS 09.25.060. At this time, counsel for Leibold made no objections to this motion on the grounds that the issue had not been pleaded, but instead argued the motion. The arguments of Leibold, first on the merchant exception to the statute,[9] then on delivery,[10] and finally that the question was one of fact to be submitted to the jury, indicate "implied consent" of Leibold to the trial of the issue of presumed fraud. The jury was instructed on the statute, indicating that in the trial court's opinion the issue had been tried by the parties.

Having concluded that this issue was properly before the court, we must determine whether the lower court erred in failing to instruct that the transaction between Ira Rothwell and Murphy was presumptively fraudulent under AS 09.25.060, rather than leaving that issue to the jury. In order to create the prima facie presumption of fraud under AS 09.25.060, the sale by Ira Rothwell to Murphy of the crane must have been unaccompanied by the "immediate delivery and the actual and continued change of possession of the [crane]." Keeping in mind the test that the evidence must be viewed in the light most favorable to the appellee,[11] Leibold, we have reviewed the record to determine whether there was sufficient evidence introduced as to the change of possession for reasonable men to differ as to whether such a change occurred.

██ Our reading of the record reveals no evidence that Murphy ever took possession or asserted control over the crane. Almost no evidence was introduced on transfer of possession. The only evidence that was presented indicated that the crane

was sitting on the Homer Spit at the time Murphy sold it to Leibold, and apparently also had been in that location while Rothwell owned it. Testimony by Clarence King, an accountant for the Rothwells, indicated that the crane was stored from the time Rothwell acquired it until the sale to Rollins on property in Homer which had been rented by Ira Rothwell. After trial, on the basis of the absence of any evidence that Murphy took possession, Rollins made a motion for judgment notwithstanding the verdict, pointing out that Murphy allowed Rothwell to retain possession of the crane, never recorded ownership, never posted signs at the location or on the crane, never provided a custodian, nor in any way asserted possession or control of the crane. From the evidence on the record, it appears conclusive that there was a lack of delivery and actual and continued change of possession of the crane from Rothwell to Murphy and, therefore, the statutory presumption that such a sale is fraudulent should have been applied. It was thus error for the trial court merely to set forth the statute in its instructions to the jury. The court should have instructed that the prima facie presumption of fraud had been established.

The fact that such a presumption was established, however, does not dispose of the case and require a verdict in favor of Rollins. In Blumenstein v. Phillips Insurance Center, Inc., 490 P.2d 1213 (Alaska 1971), we held that such a presumption can be dispelled, stating:

We must emphasize initially that AS 09.25.060 establishes only a prima facie presumption. This presumption is rebuttable. It serves merely to shift to the vendee the burden of proving that a con-

9. AS 09.25.060 provides in part:
    . . . [E]xcept that retention of possession in good faith and current course of trade by a merchant seller for a commercially reasonable time after a sale or identification is not fraudulent. . . .

10. Leibold argued that the combination of a bill of sale and testimony that Roth-

well had said in a bar conversation that the crane belonged to Murphy was a sufficient delivery to satisfy the requirement of a change of possession.

11. City of Fairbanks v. Nesbett, 432 P.2d 607, 609–610 (Alaska 1967); Mallonee v. Finch, 413 P.2d 159, 160 (Alaska 1966); Otis Elevator Co. v. McLaney, 406 P.2d 7, 9–10 (Alaska 1965).

veyance was made without fraudulent intent. Under AS 09.25.060, if a vendee has failed to establish immediate and continued possession over personalty which he has purchased, and if he makes no effort to show that the transaction was entered into in good faith, then a finding of fraud will be compelled. Where, on the other hand, the grantee introduces evidence tending to show that the conveyance in question was transacted in good faith, then the presumption will be dispelled, and it will be incumbent upon the finder of fact to determine whether there was actually an intent to defraud creditors. (Citations omitted.) 490 P.2d at 1219.

In *Blumenstein* we defined as significant, for the purposes of refutation, explanations for not taking possession such as the fact that the chattel is bulky and not readily transferable, the fact that the chattel was not in any practical sense retained by the vendor, and the fact that valuable consideration was paid for the chattel.[12]

In the absence of any explanation of the failure of Murphy to take possession of the crane, and any testimony with reference to a valuable consideration having been paid for it, the presumption established by AS 09.25.060 would have rendered the attempt-

ed sale fraudulent against creditors and subsequent purchasers in good faith, such as Rollins. AS 34.40.010 specifies that a conveyance of goods made with intent to hinder, delay or defraud creditors or other persons is void. Thus, the attempted transfer to Murphy in the absence of an explanation would be void as presumptively fraudulent to creditors and subsequent purchasers in good faith.

█ There was testimony presented, however, from which the jury could have found that there were explanations for the failure of Murphy to take possession of the crane due to its being bulky and not readily transferable. And there was further testimony that $500 had been paid by him to Rothwell. A jury question was thus presented as to whether the presumption of fraud had been overcome.

█ There is considerable conflict as to the effect that should be given a presumption in a jury trial.[13] *Blumenstein* was tried by the court without a jury and thus fails to give us guidance. Unless otherwise provided for by statute or a separate rule of court, we adopt the rule set forth in the *proposed* Federal Rules of Evidence[14] whereby once the presumption is established the opposing party has the

12. 490 P.2d at 1219–1220 and nn. 7–8.

13. Wigmore states that the peculiar effect of a presumption is merely to compel the jury to reach a conclusion in the absence of evidence to the contrary from the opponent. Upon the opponent submitting evidence sufficient to satisfy the judge as "some evidence" the presumption disappears and the case is submitted to the jury just as if there had been no presumption. Wigmore on Evidence § 2491 (3d ed. 1940).
Jones in his treatise on evidence indicates that the foregoing effect of presumptions, known as the Thayerian Rule, is the prevailing view. He further discusses the Pennsylvania rule which treats the presumption as placing on the opponent the burden of persuasion to overcome it. Under the Thayerian rule no mention of the presumption is made to the jury once it has lost its force by the introduction of contrary evidence, while under the Pennsylvania rule, the jury

should be informed of the presumption and the opponent's burden to overcome it. 1 Jones on Evidence §§ 118, 119 (5th ed. 1958).
McCormick has a more extensive discussion of the various theories including variations introduced by the Model Code of Evidence, the California Code of Evidence, the Uniform Rules of Evidence and the *proposed* Federal Rules of Evidence. He favors Rule 301 of the *proposed* Federal Rules of Evidence, which provides that the "presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." McCormick on Evidence § 345, at 821–29 (2d ed. 1972).

14. Rule 301. *Presumptions in General.*
In all civil actions not otherwise provided for by Act of Congress or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the

burden of proving that the nonexistence of the presumed fact is more probable than its existence. Thus, in this case the jury should be instructed both as to the establishment of the presumption and the burden of proving the nonexistence of the presumed fact. We believe that such a rule gives better consideration to the policy involved by the establishment of the presumption, accords to the jury its traditional function of determining factual issues and has the advantage of simplicity, so as not to be confusing to the jury.

Accordingly, it will be necessary to remand the case for a new trial and proper submission of the issue of fraud to the jury. In addition to our holding on this issue, it is necessary for us to comment on the question of damages.

The jury in the superior court trial found in favor of Leibold and awarded damages of $2,800 plus interest for the value of the crane against both defendants, and $13,500 plus interest for loss of use against Rollins. Rollins here asserts that the theories used to arrive at these damages were improper and that the amount is excessive. To determine the theories on which damages are properly to be awarded in this case, it is necessary to discuss the common-law antecedents of the claims. While it is no longer required to set out the legal theory on which a claim is

based,[15] resort to such a theory is still mandated as a basis for reaching decision.[16]

Although both parties on appeal alleged in their final briefs that the action should be characterized as an action in trover and conversion, the action as filed below could also properly be viewed as one of replevin. Since we find the proper measure of damages in this case to be the same under either theory, it is not necessary for us to characterize the action as one or the other. We therefore shall briefly discuss the measure of damages under both theories.

Replevin is defined as an action brought to recover goods unlawfully taken.[17] Thus, the normal remedy is the return of the goods. Damages are also allowed for the value of the use of the goods during the period of detention. If for any reason the goods cannot be returned, the damages are for their value plus interest.[18] Since the crane was not returned in the subject case the damages under replevin would be its value plus interest.

An action for trover and conversion is for the recovery of damages against a person who has found another's goods and wrongfully converted them to his own use.[19] Damages in an action of conversion generally are measured by the value of the item at the time it was converted plus interest.[20] Rollins argues that

presumed fact is more probable than its existence. Proposed Federal Rules of Evidence 301 (U. S. House of Representatives' tentative draft, H.R. 5463), 42 U.S.L.W. (Supplement, July 17, 1973).

15. Alaska Civ.R. 8(a); Siegelman v. Cunard White Star, 221 F.2d 189, 196 (2d Cir. 1955).

16. 2A J. Moore, Federal Practice ¶ 8.14, at 1716 (2d ed. 1972); O'Donnell v. Elgin J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949); Plastino v. Mills, 236 F.2d 32 (9th Cir. 1956).

17. Clark on Code Pleading 80 (2d ed. 1947).

18. In Gregory v. Padilla, 379 P.2d 951 (Alaska 1963), proceeding under a theory of replevin, we held that the proper measure of damages in a claim and deliv-

ery action for property not returned is the fair market value of those items at the time of conversion, plus interest to the date of verdict. Gregory allowed the net usable value of goods during their detention for items that were returned, but did not apply both damage measures to any item. 379 P.2d at 956 n. 14.

19. J. Pomeroy, Code Remedies § 404, at 612 (5th ed. 1929).

20. This measure of damages was well stated by the Oregon Supreme Court in Hall v. Work, 223 Or. 347, 354 P.2d 837 (1960), which, quoting from past cases, explained:

In an action in trover the rule for the measure of damages is well understood. The title to the property, alleged to have been converted, is regarded as having passed to the defend-

Leibold, in electing to pursue conversion, effectively abandoned the property to the converter and proceeded to sue for its value. Therefore, he argues since the conversion judgment has been entered and satisfied by Sylvia Rothwell, the title is transferred to her as of the date of conversion, and Leibold can obtain no damages for loss of use after that time. We find this argument to be an accurate representation of the law of conversion.[21]

Leibold concedes that this is the general rule, but maintains that there are special circumstances which require additional damages for loss of use. Although we recognize that some specific case authority has allowed additional damages, the consequential damages apparently envisioned under those exceptions generally seem to be items flowing directly from the conversion such as costs incurred in pursuit of the goods, and attorney's fees.[22] Some cases do recognize loss of profits as a proper basis of recovery in a conversion action.[23] As stated by Harper and James:

> The normal and usual measure of recovery in trover is the value of the goods at the time of conversion, together with interest thereon from that time until the date of judgment. The plaintiff, of course, cannot receive the chattel and at the same time recover its full value and although he may not generally be compelled to receive the chattel in mitigation of damages, if he chooses to do so, he reduces his recovery accordingly. The

entire theory of conversion is that by his tortious act the defendant has repudiated the plaintiff's property in the chattel and, by appropriating it to his own use, has treated it as his own. If, therefore, the plaintiff chooses to treat him as a converter rather than as a trespasser, the defendant must pay for the goods at their value. . . .

> Consequential damages are also occasionally allowed if specially pleaded and proved. Because of the assumption that chattels are generally replaceable and that the interest on the recoverable value of the chattel compensates the plaintiff, courts are reluctant to allow damages for the loss of use of the property, although damages of such kind or for loss of special profits are sometimes allowed in unusual cases. (Citations omitted.)[24]

■■■ We do not find this to be an appropriate case to award loss of profit in addition to the value of the crane. From the facts developed at the trial it appears that Rollins purchased the crane at an executor's sale, received the keys and an Alaska motor vehicle title to it, and had no knowledge of competing claims. Neither Murphy nor Leibold had in any way manifested their adverse claim to the crane and they, thus, contributed to Rollins' impression that the crane was free of any other claims. As a bona fide purchaser for value, Rollins is an innocent converter and, as such, under the facts of this case, should not be required to pay a judgment so out

---

ant, who is liable for its value, together with simple interest. "The measure of damages, therefore, in an action of trover, unless plaintiff, by reason of the unlawful act of the defendant, has suffered some special loss or injury, which must be alleged, is the value of the property at the time of the conversion, with interest thereon to the trial." (Citations omitted.) 354 P.2d at 842.

21. *See* Hall v. Work, 223 Or. 347, 354 P.2d 837 (1960).

22. Craddock v. Jones, 143 So. 529 (La. Ct.App.1932) ; Lamoreaux v. Randall, 53 N.D. 697, 208 N.W. 104 (1926) ; Fulks

v. Fulks, 95 Ohio App. 515, 121 N.E.2d 180 (1953).

23. *See, e. g.,* United States v. Hatahley, 257 F.2d 920 (10th Cir. 1958), cert. denied, 358 U.S. 899, 79 S.Ct. 222, 3 L. Ed.2d 148 (1958) ; Preble v. Hanna, 117 Or. 306, 244 P. 75, 78 (1926) ; Colorado Kenworth Corp. v. Whitworth, 144 Colo. 541, 357 P.2d 626, 631 (1960) ; Craddock v. Jones, 143 So. 529, 531 (La.Ct. App.1932) ; Harris v. Christianson-Keithley Co., 303 S.W.2d 422 (Tex.Ct. App.1957) ; Waller v. Hail, 46 S.W. 82 (Tex.Ct.App.1898).

24. 1 F. Harper & F. James, The Law of Torts § 236, at 190–92 (1956).

of proportion to the value of the crane. We, therefore, hold that under the theory of conversion and upon the particular facts of this case, recovery cannot be had for both the value of the crane and net lost profit. The amount of damages should be limited to the value of the crane plus interest. In no event should both interest and damages for loss of use be allowed, since loss of use damages generally are considered to be in lieu of interest, and to grant both would allow a double recovery.[25]

Accordingly, the case is remanded for a new trial to be conducted in accordance with this opinion.

ERWIN and FITZGERALD, JJ., not participating.

25. State v. Stanley, 506 P.2d 1284, 1295 (Alaska 1973).